700 A.2d 852

**Marquita E. WISE–JONES**

v.

**Thomas Ellsworth JONES.**

**No. 196, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 29, 1997.

490

Yvette Chesson–Wureh, Riverdale, for appellant.

Charles J. Janus, Temple Hill, for appellee.

Argued before MOYLAN and CATHELL, JJ., and ROSALYN B. BELL, Judge (retired), Specially Assigned.

CATHELL, Judge.

Marquita E. Wise–Jones appeals from judgments of the Circuit Court for Prince George's County that 1) entered an immediate order which implemented a master's recommendation that custody of the parties' child, Aaron M. Jones, be with Thomas Ellsworth Jones, appellee; 2) denied her exceptions to the master's recommendation; and 3) modified· a prior judgment of divorce so that appellee was granted custody of the child with appellant retaining reasonable rights of visitation.

We shall reverse the judgments of the circuit court.

### The Facts

On 7 September 1994, appellant and appellee were granted a judgment of absolute divorce. As part of that divorce decree, appellant retained custody of the parties' minor child and appellee was afforded reasonable rights of visitation.

Appellee filed a Motion for Contempt and Request for Modification of Judgment of Absolute Divorce on 22 January 1996. In that motion, he alleged that appellant had denied him access to Aaron and requested that the court award him sole custody of the minor child.

Following a "home study" conducted by the Department of Social Services, a hearing was held on 18 June 1996 before a Master for Domestic Relations Causes (master) regarding the modification of child custody. Additional testimony was taken on 20 June 1996 regarding health insurance coverage that was to be provided by appellee. The master ultimately recommended, in a written report sent to the parties on 12 July 1996, that "the Judgment of Absolute Divorce dated 9/2/94 be modified to grant [appellee], Thomas Ellsworth Jones, Jr. custody of the one minor child, Aaron M[.] (5/24/90) with reasonable rights of visitati[o]n granted to [appellant], Marquita E[.] Wise–Jones every other weekend." ‚Appellant promptly filed exceptions to the Master's recommendations on 22 July 1996.

On 29 August 1996, appellant filed a Motion to Extend Time for the filing of the transcript of the Master's hearings. Along with that motion, appellant filed pages one through fifty-eight of the transcript of the 18 June 1996 hearing. This motion for extension of time was granted by the trial court on 4 September 1996, and appellant was given until 22 September 1996 to produce a transcript of the hearing. A transcript of the remainder of the 18 June 1996 hearing was filed on 10 September 1996. The transcript of the 20 June 1996 hearing was not produced until 18 November 1996.

On 3 September 1996, appellee filed a pleading entitled "Ex Parte Motion for Temporary Custody." In that motion, appellee requested an "ex parte" order for temporary custody. The reasons for appellee's requested relief included:

1. That Master Rumsey held a plenary hearing on June 18, 1996 and found that [appellant] had abused her six-year old child, Aaron Jones, and that the child feared the mother.

2. In addition, the Master awarded [appellee] custody.

3. That [appellant] filed exceptions to the ruling on July 18, 1996, but has not produced a transcript.

4. That a hearing is not scheduled yet and the child must start school.

5. To avoid further abuse and allow the child to attend one school until a hearing is held or the exceptions are dismissed, [appellee] is requesting that he be awarded temporary custody.

Although a hearing as to appellee's "ex parte" motion was not held, the trial court granted the motion on 5 September 1996. The court's order provided that appellee "be, and hereby is forthwith, awarded custody of Aaron Jones."

A hearing on appellant's exceptions to the master's written report also was never held by the trial court. In a memorandum sent by the trial court to appellant's counsel prior to the dismissal of appellant's exceptions, the court explained the procedural posture of the case at that time:

This memorandum is in response to your memorandum of November 19, 1996, indicating ex parte relief had been

granted against your client without notice or opportunity for a hearing.

There was a *full* hearing on [appellant's] Motion to Modify a Judgment of Divorce, which had granted custody to [appellee]. Both parties were pro se at the time. On April 18, 1996, the Master took some testimony and requested a Department of Social Service home study. On June 18, 1996, the Master recommended that the Judgment be modified to grant custody to [appellee].

Those recommendations were based upon the Master's finding that [appellee] is a fit and proper custodian for the child and that [appellant] had conducted a long-term and meritless course of action to deny any meaningful visitation to [appellee]. Accordingly, the Master felt that it would be in the best interest of the child to be placed with [appellee].

[Appellant] then hired Ms. Chesson–Wureh, who excepted to the Master's recommendations. [Appellee] then hired Mr. Janus, who opposed the exceptions. When Mr. Janus filed his Ex–Parte Motion for Temporary Custody on September 3, 1996, the Master considered the fact that his goal of placing the child situated in a stable school environment would be defeated if he were to remain with [appellee] pending the exceptions, and then be transferred in the middle of the school year.[1] For those reasons, the Master recommended a Forthwith Order.

The Master indicates that Ms. Chesson–Wureh *was* notified of [appellee's] request for Ex–Parte Temporary Custody. . . .

*The only "ex-parte" issue was whether to modify his recommendations of June 18th to provide for an immediate Order.* For the reasons previously given, the Master felt an immediate Order was appropriate. . . .

---

1. This is incorrect. The record discloses no such written findings of fact by the master. If he, in some manner, made oral findings, we have been unable to find them in the extract. The parties made no extract reference in this regard.

The Court is of the opinion that although [appellee] filed an Ex–Parte Motion for Custody on September 3, 1996, the Master's actions were not ex-parte. All he did was supplement his recommendations, which were made after a full hearing, to make them forthwith.

Furthermore, the Court is of the opinion that all of this is moot, in that the transcript pertaining to the exceptions on the merits was not timely filed. [Some emphasis added.]

The trial court later filed its order on 6 January 1997. It provided: "**ORDERED**, that [appellant's] Exceptions be, and hereby are, dismissed as moot; and it is further, **ORDERED**, that the Judgment of Absolute Divorce dated September 2, 1994 be, and hereby is, modified to grant [appellee] ... custody of ... Aaron M. Jones...." Appellant filed a timely notice of appeal on 29 January 1997.

Appellant presents four questions on appeal:

1. Did the trial court err in granting [a]ppellee ex parte custody while exceptions were pending and without finding an emergent need to protect the child and without granting a hearing on the order?

2. Did the trial court err when it dismissed [appellant's] exceptions as moot because she did not file a transcript of a contempt hearing even though [appellant's] exceptions related only to the Master's recommendations and [the] hearing on modification of custody?

3. Did the trial court err in modifying custody when it failed to make findings of fact or conduct an independent review of the case?

4. Did the trial court violate [appellant's] right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution?

### Discussion

**1. Did the trial court err in granting [a]ppellee ex parte custody while exceptions were pending and without finding an emergent need to protect the child and without granting a hearing on the order?**

■ In order to resolve successfully this issue, we must examine the trial court's authority to enter an immediate order based upon a master's recommendations. Although appellee's motion below was framed as an "ex parte" motion, it was in essence a request that the trial court enter an immediate order transferring custody of the child to appellee prior to a final determination of appellant's exceptions to the master's recommendation. We shall first examine a case that is factually similar to the case *sub judice.* Although the ultimate holding in that case is not controlling because of statutory modifications to the authority of the trial court to enter immediate orders, its discussion of the trial court's authority is instructive.

In *Stach v. Stach,* 83 Md.App. 36, 573 A.2d 409 (1990), following a hearing regarding pendente lite custody, child support, and visitation, the master recommended that custody remain with the mother. The father immediately filed exceptions to the master's recommendations. Prior to a hearing on the exceptions, the trial court, pursuant to a motion filed by the mother, entered an immediate order implementing the master's recommendations. On appeal, the father argued that the trial court did not have the authority to enter such an order. We stated:

> As we have already pointed out, this matter was referred to a master for a hearing on the issues of custody, support, and visitation of children pendente lite. Maryland Rule 2–541(b)(2). As we have also said, appellant timely filed exceptions to the master's recommendations. Under these circumstances, the authority of the circuit court to enter an immediate order based upon the master's recommendations is very limited.

*Id.* at 41, 573 A.2d 409. We ultimately held "a circuit court is without authority to pass an immediate order awarding custody of children pendente lite, upon the recommendation of a master, when exceptions to the master's recommendations have been timely filed and a hearing on those exceptions has been requested and has not been held." *Id.* at 43, 573 A.2d 409.

It is clear that the circuit court's authority is no longer circumscribed in such a manner. Former Maryland Rule S74A(f), now Maryland Rule 9–207(f), clearly provides for the entry of immediate orders awarding custody of children based upon a master's recommendations.[2] A party may seek an immediate custody order by a circuit court "[u]pon a finding by a master that *extraordinary circumstances exist* and a recommendation by the master that an order concerning pendente lite relief be entered immediately." Md. Rule S74A(f)(2) (emphasis added). Following such findings by the master, "the court may direct the entry of an immediate order *after reviewing the file and any exhibits, reviewing the master's findings and recommendations, and affording the parties an opportunity for oral argument.*" Md. Rule S74A(f)(2) (emphasis added).

We recently discussed Maryland Rule S74A(f)(2) in *Miller v. Bosley,* 113 Md.App. 381, 688 A.2d 45 (1997). In that case, the master conducted a hearing on the issue of child custody. Following that hearing, the master issued a report recommending that custody of the parties' child be granted immediately to the father's sister. After the trial court conducted its own hearing, it entered an immediate order implementing the master's recommendation as to custody. On appeal, the mother, who did not file exceptions to the master's recommendations, argued that the trial court improperly granted an immediate order pursuant to Maryland Rule S74A(f)(2). We noted in *Miller* that the master made few findings and recommendations. The master found: 1) the parties were the child's biological parents; 2) the parties had a relationship; 3) the mother and father were not credible and used vulgar language; 4) the best interests of the child would be served by granting pendente lite custody to the father's sister, and 5) the court should determine the "nature and desires of the child's parents." *Id.* at 389, 688 A.2d 45. We ultimately held:

---

2. We shall refer to Rule S74A as it was the rule in effect at the time of the trial court's actions.

Section (f) [of Maryland Rule S74A] specifically limits the power of the trial judge to enter an order following a master's hearing. The trial judge purported to issue his opinion under subsection (2) of that section. [The father] has not argued that the judge's order was sustainable on any other basis. Accordingly, we limit our analysis to that subsection and do not consider whether the chancellor's disposition would have been proper under the other provisions of Md. Rule S74A(f). Md. Rule S74A(f)(2) allows the judge to act immediately if the master finds "extraordinary circumstances" and recommends immediate disposition. As we noted in the fact section of this opinion, the master did not make the requisite finding that extraordinary circumstances exist, although he did recommend an immediate change of custody. We conclude that the master's failure to predicate his recommendation on a finding of "extraordinary circumstances" prevents disposition under Md. Rule S74A(f)(2). In so concluding, we note that the lengthy delay of fifty days between the master's hearing and the issuance of his report supports a reasonable inference *that there was no immediate threat to the child constituting an extraordinary circumstance.* This is a further reason why the master's omission of any clear explanation of what could have been an extraordinary circumstance prevented the chancellor from relying on the master's report as a predicate for his action to order an immediate change in custody.

*Miller,* 113 Md.App. at 393–94, 688 A.2d 45.

While the master made recommendations in the case *sub judice,* as we have indicated, the record, as contained in the extract, does not support that the master made any findings of fact at all. The master's report merely provided that custody should be granted to appellee. The report contained only recommendations. *Moreover, the report did not indicate extraordinary circumstances present that would justify an immediate change in custody.*[3] Accordingly, the trial court was

---

3. While we do not decide it here, we would question whether the consideration of school placement, under circumstances similar to

not justified in issuing the immediate order based upon the master's report. In addition, the approximately twenty-three-day delay from the date of the hearing to the issuance of the report indicates that such extraordinary circumstances did not exist.

We also note the trial court erred for another reason. Following appellee's "ex parte" motion, which was in reality a request that the trial court enter an immediate order transferring custody, *i.e.*, a forthwith order, an order was issued that had affixed to it the signature of the master and a stamped signature of the trial judge. That order provided that appellee "be, and hereby is forthwith, awarded custody of Aaron Jones."

As we have noted previously in this opinion, the power of the trial court, as well as the authority of the master, is limited by the Maryland Rules and the statutes providing for the use of masters in domestic relations cases. Maryland Rule S74A(f)(2) provides:

> [T]he court may direct the entry of an immediate order *after* reviewing the file and any exhibits, [after] reviewing the master's findings and recommendations, and [after] affording the parties an opportunity for oral argument. The court may accept, reject, or modify the master's recommendations. An order entered under this subsection remains subject to a later determination by the court on exceptions. [Emphasis and bracketed material added.]

As the rule indicates, the trial court, not the master, must review the file and exhibits, review the master's findings, and provide the parties an opportunity for oral argument. A trial court may not issue the order until after it, *and not the master*, has reviewed the matter it is required to review and after it, the court, *i.e.*, the judge, has afforded an opportunity

those in the case *sub judice*, would constitute an "extraordinary circumstance" as defined by the rule. School placement questions, similar to those present, often occur in custody matters. To the extent the master's recommendation for immediate custody was based solely on the school situation, it was simply wrong.

for oral argument. A master is not the trial judge. A master does not replace her or him.

It is clear that the trial court did not provide the parties an opportunity for oral argument after the master's hearing and prior to the entry of the order that immediately transferred custody of the parties' child to appellee. Appellee's assertion that appellant was afforded an opportunity for argument during the master's hearing is not a hearing that complies with the rule. The rule clearly contemplates that if an immediate order is to be granted by the trial court, the trial court, not the master, must provide the parties an opportunity for oral argument.

Moreover, we additionally note that it is unclear whether the trial court reviewed the file and exhibits or reviewed the master's findings prior to the entry (by whomever) of the immediate order transferring custody. A "Memorandum to File," contained in the record and filed 21 November 1996, provides:

> Counsel for [appellee] and counsel for [appellant] appeared at Master's Office on September 4, 1996. Counsel for [appellee] submitted file and Motion for Forthwith Order. As the Master was on the bench, the Master's office informed counsel that the Motion would be ruled on the next morning. Counsel for [appellant] having not appeared on September 5, 1996, the Master ruled on the Motion. The Master's office notified [appellant's] counsel by telephone that the Forthwith Order was being signed.

This memorandum seems to indicate the trial court never reviewed the file and exhibits or the master's findings before the immediate order transferring custody of the minor child was entered. It also appears that it was the master, not the trial judge, who was executing the order of the circuit court at issue here. To the extent it is the practice of any of the county circuit courts to allow a master to enter immediate orders transferring custody of children, it is inappropriate. Maryland Rule S74A does not give or permit the delegation of such authority to masters. It is only the trial court that may

enter an immediate order transferring custody of a child "after reviewing the file and any exhibits, reviewing the master's findings and recommendations, and affording the parties an opportunity for oral argument." Md. Rule S74A(f)(2). To the extent this was not done in the case *sub judice*, the trial court erred.

In *Domingues v. Johnson*, 323 Md. 486, 497, 593 A.2d 1133 (1991), Judge McAuliffe, for the Court, admonished the trial courts that then utilized masters:

> As we have attempted to make painfully clear, the burden cast upon a chancellor in a case of this kind is substantial. The necessity that the chancellor rule on challenges to findings of fact which may involve testimony spread throughout hundreds of pages of transcript, the difficulty of making a decision as to the best interest of a child without personally observing the witnesses, and the critical nature of the decision that must be made, as well as the wide discretion that is necessarily afforded that decision by the appellate courts, all speak to the care and attention that must be given the case by a chancellor.

> Although the use of masters has proven beneficial in a variety of cases, the question of the advisability of referring contested custody cases to a master in those instances where the trial court has discretion to do so, is one that should be carefully considered. If a chancellor must essentially duplicate the effort and dedication of time of a master in order to ultimately decide a case, nothing has been gained by referral to the master. On the other hand, if, because of the expertise of the master, or for other reasons, parties often accept the recommendation of the master and exceptions are infrequently filed, the use of a master may be advisable. [Footnote omitted.]

As we have indicated in the case at bar, it appears that the trial judge did not review that which he should have reviewed before his signature was somehow affixed to the "forthwith" order. It is absolutely clear that the trial judge did not afford

an opportunity for appellant to present oral argument *to him.* The opportunity for oral argument must take place after the master's recommendation, not at some hearing before the master that precedes his or her recommendation.

■ We are further concerned by what we perceive to be the use of a signature stamp bearing the judge's signature to affix the judge's signature to the "forthwith" order. We also note that there was a correction made to the order after it was typed. The hand printed word "forthwith" was added to the order. This addition is initialed by the master, not the trial judge. We have numerous questions about this practice. Does the master physically affix the stamped signature? Does the clerk of the court? Does the law clerk? Does the judge's secretary? Is there a practice in this jurisdiction of having others affix judicial signatures? Any affixing of a signature by someone other than the judge calls into question the validity of the order so signed unless there is some specific ratification of each specific signature. If, as it appears may be likely, the masters in this jurisdiction are not only preparing orders, but affixing judges' stamped signatures to orders that required a judge's review prior to the issuance, it is a practice that should immediately stop. A judge may not delegate the judicial duties and responsibilities that are exclusively his or hers to the bearer of his or her signature stamp.[4] This practice, if it exists, as it appears that it does, calls into question the validity of any orders in any case resolved in this manner. Moreover, what happens if a party declines to comply with an order bearing a stamped signature by someone other than a judge when only a judge has the power to

---

**4.** The courts of this state have repeatedly emphasized that trial judges may not delegate their judicial responsibilities to masters. See *In re Anderson,* 272 Md. 85, 105, 321 A.2d 516 (1974) ("Masters are not judges and, therefore, are not vested with any part of the judicial power of the State."); *Wenger v. Wenger,* 42 Md.App. 596, 602, 402 A.2d 94 (1979)("Chancellors—as judicial officers—may never delegate away a part of the decision-making function to a master—a nonjudicial officer.").

enter such an order? How is the party sanctioned? [5]

In *Dobrow v. Dobrow,* 50 Md.App. 465, 471, 439 A.2d 596 (1982), we commented on the use of signature stamps by judges in another county. We noted: "[T]he Master's proposed order was presumably approved and stamped with a facsimile signature of the Chancellor on February 18, 1981...." *Id.* at 467, 439 A.2d 596. We admonished the trial court: "We suggest the immediate end to the use of facsimile signatures on original orders and decrees. Without the original signature of the reviewing judge there is nothing in the record to support a conclusion that the Chancellor ever personally saw the order." *Id.* at 471–72, 439 A.2d 596.

■ The use of "signature stamps" to affix judicial signatures is not only questionable at the least, and inappropriate generally, it may be highly risky as well. If the stamp exists, there is a risk that it will be obtained by unauthorized persons, and used by them to execute unauthorized orders, *i.e.,* commitments, releases, judgments, dismissals. The potential for mischief is unlimited.

**2. Did the trial court err when it dismissed [appellant's] exceptions as moot because she did not file a transcript of a contempt hearing even though [appellant's] exceptions related only to the Master's recommendations and hearing on modification of custody?**

■ As indicated above, appellant filed a complete transcript of the 18 June 1996 hearing within the requisite time

---

**5.** We are not unaware of the great demands that family law cases place upon the trial courts. The resolution of domestic matters is, however, one of the primary, and perhaps most important, functions that trial courts perform. We are likewise not unaware of the emotional toll that a daily judicial confrontation with such issues can take on many trial judges. That, however, is no reason for the wholesale abdication of judicial powers to masters, however good, or even better, the masters may be. The persistent demands for the creation, either within or without the present judicial system, of a family court, with judicial personnel either appointed or assigned exclusively to domestic matters, is caused, in part, by the way in which the trial courts' prioritizations result in less efficient and lesser judicially scrutinized domestic proceedings.

period. The 20 June 1996 transcript was not filed until 18 November 1996. The trial court never rendered a decision regarding appellant's exceptions to the master's recommendations. Instead, the court dismissed the exceptions as being moot because appellant had failed to file the entire transcript within the requisite time period.

Maryland Rule S74A(e) provides that when exceptions to a master's recommendations have been filed, "[a] transcript shall be ordered and filed as required by Rule 2–541(h)(2)." Maryland Rule 2–541(h)(2) states that "a party who has filed exceptions shall cause to be prepared and transmitted to the court a transcript of so much of the testimony as is necessary to rule on the exceptions." This rule further provides that the trial court may dismiss a party's exceptions for failure to comply with the rule.

We recently noted the applicable standard of review regarding interpretation of court rules in *Morales v. Morales*, 111 Md.App. 628, 632, 683 A.2d 1124 (1996), *cert. denied*, 344 Md. 567, 688 A.2d 446 (1997):

> "[W]hen interpreting a rule the same standards and principles apply as those utilized in interpreting a statute." *Stach*, 83 Md.App. at 40, 573 A.2d 409. Accordingly, in interpreting Rule S74A, we must "effectuate the real and actual intention of the Court of Appeals." *Id.* (quoting *Potter v. Bethesda Fire Dept.*, 309 Md. 347, 352, 524 A.2d 61 (1987))(quoting *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976))…. [W]e generally must construe a rule in accordance with the plain meaning of its language. *Stach*, 83 Md.App. at 40–41, 573 A.2d 409 (quoting *Potter*, 309 Md. at 353, 524 A.2d 61).

The plain language of the rule indicates that the entire transcript of the hearing or hearings does not have to be filed with the trial court. Maryland Rule 2–541(h)(2) provides that a party filing exceptions must provide a "transcript of so much of the testimony as is necessary to rule on the exceptions." Under the circumstances of this case, enough of the transcript

was provided so as to enable the trial court to rule on appellant's exceptions. We explain.

█ An examination of the 20 June 1996 master's hearing indicates that that testimony concerned whether appellee had furnished the health insurance as he was required to pursuant to a previous court order.[6] The testimony during the 20 June 1996 hearing did not relate to modification of child custody. The 18 June 1996 transcript, which was timely filed, provides the only testimony relevant to a determination regarding child custody. Appellant's exceptions related solely to child custody. Accordingly, appellant, by timely submitting the 18 June 1996 transcript, filed enough of the transcript so as to enable the trial court to rule on appellant's exceptions. The trial court erred in dismissing appellant's exceptions for failing timely to file the entire transcript.

## Conclusion

█ Due to the resolution of appellant's first two questions, it is unnecessary for us to consider her third and fourth questions. We shall remand to the Circuit Court for Prince George's County for a determination regarding appellant's exceptions. In this regard, we note the holding of *Domingues*. When a party files exceptions to a master's report, the trial court may not accept the master's recommendation based simply upon a finding that the master was not clearly erroneous. *Domingues*, 323 Md. at 490, 593 A.2d 1133. The trial court must "subject[] the master's fact-finding to a clearly erroneous test and then exercis[e its] independent judgment concerning the proper conclusion to be reached

---

6. There is nothing contained in the docket entries in respect to the 20 June 1996 hearing indicating that custody matters, other than the issue of health insurance, were before the master on that date. Although the 18 June 1996 transcript indicated the master was going to talk to the child at the 20 June 1996 hearing, the 20 June 1996 transcript does not indicate such a talk took place. The 20 June 1996 transcript did not relate to any matters other than insurance. In fact, the master stated at the 20 June 1996 hearing, "I am not asking for any more testimony. The testimony I had two days ago is sufficient for me to go ahead and make my recommendation."

upon those facts." *Id; accord Kierein v. Kierein,* 115 Md. App. 448, 454, 693 A.2d 1157 (1997); *Miller,* 113 Md.App. at 396–97, 688 A.2d 45; *Lemley v. Lemley,* 109 Md.App. 620, 626–27, 675 A.2d 596 (1996), *cert. denied,* 344 Md. 567, 688 A.2d 446 (1997). In addition to the challenges surrounding the master's findings of facts, the trial court's oral or written opinion "should address as well the issues relating to the conclusions to be drawn from the facts found." *Kirchner v. Caughey,* 326 Md. 567, 572, 606 A.2d 257 (1992).

**JUDGMENT MAKING MASTER'S CUSTODY RECOMMENDATION IMMEDIATE IS REVERSED; JUDGMENT DISMISSING APPELLANT'S EXCEPTIONS TO THE MASTER'S REPORT IS VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY COSTS.**