714 A.2d 841

STATE of Maryland

v.

Kevin Joseph WIEGMANN.

No. 13, Sept. Term, 1998.

Court of Appeals of Maryland.

Aug. 4, 1998.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Petitioner.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

This case presents the issues of the authority of masters in domestic cases and the continued viability of the common law

rule permitting individuals illegally arrested to resist such an arrest. We hold that under the Maryland Rules, masters have no authority to order an arrest pending an entry of a judicial order in accordance with the master's recommendations of contempt. Furthermore, we decline to abolish the common law rule of the right to resist an unlawful arrest because such an action is a task better left to legislative consideration.

## I. Facts

The facts in this case are not in dispute. Kevin Joseph Wiegmann, respondent, appeared without counsel at a contempt hearing in the Circuit Court for Howard County before Master Elaine Patrick on September 21, 1995. The contempt hearing was being held in connection with respondent's failure to pay court-ordered child support. At the conclusion of the hearing, Master Patrick determined that respondent was in contempt. We shall set forth a portion of the redacted transcript in that hearing, as modified by Judge Hollander, writing for the Court of Special Appeals in its opinion below:

[MASTER PATRICK]: Based on the evidence I've heard today, *it is quite clear to me that the defendant is in contempt.*

\* \* \* \*

*So I am going to hold you in contempt. I'm going to sentence you to forty-five (45) days' incarceration.* I'm going to set a purge figure of Thirty–Five Hundred Dollars ($ 3,500.00), Mr. Wiegmann. That means, *if you pay the thirty-five hundred dollars, you do not have to serve the time.* That's the difference between civil and criminal contempt.[1]

---

**1.** A master's power is limited to making recommendations to a judge that a party be found in contempt. We know of no authority, under the circumstances of this case, for a master who is not a judicial officer to sentence contemptors, set purge amounts, and order law enforcement officers to take people into custody. Moreover, we know of no authority for a master to hold herself out as a judge.

*In light of your claim to live in Georgia, I am going to recommend that the incarceration be immediate from the courtroom, and that an immediate Order be entered.* I'm going to enter a judgment for the arrears, which is Fourteen Thousand, Nine Hundred and Ninety–Three Dollars and Sixty–Five Cents ($ 14,993.65). Payments through the Department of Social Services, secured by a wage lien. Future service by first-class mail.

Mr. Wiegmann: Your Honor?

The Master: Yes, Mr. Wiegmann?

Mr. Wiegmann: *Ah, I want to, like to file my exceptions now.*

The Master: Mr. Wiegmann, you can file those prior to your exceptions. *I'm going to recommend that an immediate order be entered, so we can—*

Mr. Wiegmann: *Also, a motion for stay of sentence pending the outcome of the exceptions hearing.* And a request for filing fees and costs be paid by the State for my transcripts and other related fees, since I was not—, Public Defender's—. *(To the Deputy) Hold on a second. Hold on a second. Get, get away from me until I'm done.*

The Master: Excuse me, Mr. Wiegmann. *This is not up to you at this point.*

The Deputy: *Put your hands behind your back.*

The Master: *Cooperate with the deputies, Mr. Wiegmann.*

*Wiegmann v. State,* 118 Md.App. 317, 322–23, 702 A.2d 928, 931 (1997).

At that point, a melee ensued. One of the deputies on duty in the courtroom testified it appeared respondent was going to strike the other deputy, so he grabbed respondent's arm. Respondent struck that deputy in the jaw. Respondent then attempted to run out of the courtroom, but the two deputies grabbed him and all three fell down. Fearful that respondent was going to grab for one of their guns, one of the deputies yelled to Master Patrick to hit the panic alarm button and then sprayed respondent in the face with pepper spray. Respondent finally was handcuffed and taken into custody.

As a result of the courtroom brawl, respondent was charged with resisting arrest and assault and battery. He was acquitted by a jury in the Circuit Court for Howard County of the resisting arrest charge, but convicted of battery. The trial court sentenced respondent to ninety days of incarceration, with all but ten days suspended, and fifteen months of probation.

Over the dissent of Chief Judge Murphy, the Court of Special Appeals vacated respondent's conviction and remanded the case to the circuit court. In her excellently written and thorough opinion, Judge Hollander held that respondent's arrest was illegal because masters have no implicit or express authority to order arrests, that respondent's warrantless arrest was not a valid arrest pursuant to a flawed warrant issued by a judicial officer, and that the circuit court erred in refusing to instruct the jury as to the conditions under which one is entitled to resist an arrest.

We granted the State's petition for writ of certiorari to consider the important issues presented by this case. Petitioner presents the following questions for our review:

1. Is a defendant who resists an arrest in a courtroom pursuant to a master's order precluded from arguing that he was entitled to resist the arrest?

2. Should this Court abolish the common law right to resist an illegal warrantless arrest?

We shall affirm the Court of Special Appeals.

## II. Discussion

### A. Authority of Masters

As we noted, Judge Hollander wrote an excellent opinion for the Court of Special Appeals with regards to the authority of masters. The opinion was thoroughly researched and defined clearly the law in Maryland. In the interest of conserving judicial resources, we see no point in rewriting or paraphrasing that part of the opinion of the Court of Special Appeals on this issue when we would reach the same results for essentially the same reasons. Accordingly, we shall adopt

portions of the opinion of the Court of Special Appeals dealing with the authority of masters as restated verbatim, *infra.*[2] We shall set forth additional points as necessary following our recital of the relevant portions of the opinion in *Wiegmann*, 118 Md.App. at 334–44, 702 A.2d at 936–41 (footnotes omitted): [3]

> We recently observed that "the authority of the master[ ] is limited by the Maryland Rules and the statutes providing for the use of masters in domestic relations cases." *Wise–Jones v. Jones*, 117 Md.App. 489, 499, 700 A.2d 852 (1997). This suggests that the master's authority must derive either from a statute or a rule. We look to Maryland Rules 9–207 and 2–541(c), which govern the powers of a domestic master. Pursuant to Rule 9–207(a)(1), matters of contempt for noncompliance are routinely referred by the clerk to a master "as of course," unless the circuit court directs otherwise. Rule 9–207(a)(1) specifically authorizes a master to preside at a hearing regarding contempt for noncompliance with an order relating to the payment of alimony or child support. Further, Maryland Rule 9–207(b) provides: "The master shall have the powers provided in Rule 2–541(c) and shall conduct the hearing as provided in Rule 2–541(d)." In turn, Maryland Rule 2–541(c), states, in part, that
>
> > a master *has the power to regulate all proceedings in the hearing,* including the powers to:
> >
> > (1) Direct the issuance of a subpoena to compel the attendance of witnesses and the production of documents or other tangible things;
> >
> > (2) Administer oaths to witnesses;
> >
> > (3) Rule upon the admissibility of evidence;

---

2. We shall, however, omit some of the citations proffered in Judge Hollander's exhaustive treatment of this issue.

3. For the sake of simplifying this portion of the opinion, we shall restate the opinion as it appears in the reported case below. In doing so, we note that "appellee" (the State) is the petitioner in the case before this Court and that the appellant in the Court of Special Appeals, Kevin Joseph Wiegmann, is the respondent before this Court.

(4) Examine witnesses;

(5) Convene, continue, and adjourn the hearing, as required;

(6) Recommend contempt proceedings or other sanctions to the court; and

(7) Make findings of fact and conclusions of law.

(Emphasis added).

It is patently clear that the rules do not grant express power to a domestic master to hold a litigant against his will after a non-support hearing, although masters are authorized to conduct evidentiary hearings and to make findings of fact and recommendations to the circuit court. Indeed, even Master Patrick agreed that she lacked express authority to arrest appellant. The State is of the view, however, that the rules do not contain an exhaustive list of the master's powers. In addition to the explicit powers conferred by Rule 2–541(c), the State asserts that the rule implicitly includes the power to detain, because such power is inherent in the authority conferred upon a master to "regulate all proceedings" at a hearing. It thus posits that the master had implied authority, under Maryland Rule 2–541, to detain appellant for a reasonable period, pending judicial review of the master's recommendations. Therefore, we must determine if the phrase "regulate all proceedings," as used in Rule 2–541(c), confers upon the master the power to hold someone in custody pending judicial review of a master's recommendation for immediate incarceration.

As we set about to interpret the rule, we must apply the same standards of construction that apply to the interpretation of a statute. . . .

If the rule is ambiguous, we may look to other sources in order to determine the Court of Appeals's intent. *Long [v. State],* 343 Md. [662] at 667, 684 A.2d 445 [(1996)]; *In re Victor B.,* 336 Md. at 94, 646 A.2d 1012; *Leppo v. State Highway Admin.,* 330 Md. 416, 422, 624 A.2d 539 (1993). Even if the language of a rule is clear, we may consider extrinsic material that " 'fairly bears on the fundamental

issue' " of the purpose or goal of the rule, *Stach [v. Stach]*, 83 Md.App. [36] at 42, 573 A.2d 409 [(1990)] (quoting *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987)). This is because "[o]ur mission is to give the rule a reasonable interpretation in tune with logic and common sense." *In re Victor B.*, 336 Md. at 94, 646 A.2d 1012. Therefore, we may consider the history of a particular rule as an aid to determining the court's intent. *Long*, 343 Md. at 668, 684 A.2d 445; *Stach*, 83 Md.App. at 42, 573 A.2d 409.

In construing the rule here, we are mindful of the principle that the expression of one thing is generally the exclusion of another. *Long*, 343 Md. at 666, 684 A.2d 445; *Leppo*, 330 Md. at 423, 624 A.2d 539. On the other hand, the use of the word "including" suggests that the seven enumerated powers are not exclusive. "Ordinarily, the word 'including' means comprising by illustration and not by way of limitation." *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 111, 453 A.2d 1198 (1983); *see also Carroll County v. Raymond I. Richardson Found., Inc.*, 71 Md.App. 434, 441, 526 A.2d 81 (1987). Nevertheless, the enumerated powers in Rule 2–541(c) are procedural, not substantive. To be sure, the power to arrest is substantive in nature.

We conclude that the rule does not implicitly confer upon the master the power to detain appellant pending judicial review of a master's recommendation. The construction of the rule urged by the State would engraft upon the rule a meaning not evident from the plain text and would be wholly inconsistent with the advisory, clerical, and ministerial functions that masters have traditionally performed. Construing the nature of the master's power under the rule as procedural also comports with the traditional functions of the master. We turn to examine the role of a master and his or her corresponding powers.

A master is not a judicial officer, and the Maryland Constitution does not vest a master with any judicial powers. *In re Anderson*, 272 Md. 85, 106, 321 A.2d 516 (1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667

**594**

(1975); *see also Swisher v. Brady*, 438 U.S. 204, 209, 98 S.Ct. 2699, 2703, 57 L.Ed.2d 705 (1978) ("masters [in Maryland] are entrusted with none of the judicial power of the State"); *Lemley v. Lemley*, 102 Md.App. 266, 277, 649 A.2d 1119 (1994) ("[T]he master is not a judge and is not vested with any part of the State's judicial power."); *Sensabaugh v. Gorday*, 90 Md.App. 379, 390, 600 A.2d 1204 (1992) ("Once a master has recommended a contempt proceeding it is necessary for the court to issue the show cause order because the master does not have the power to issue such orders."). "Simply put, the Master is a ministerial and not a judicial officer." *Levitt v. Levitt*, 79 Md.App. 394, 399, 556 A.2d 1162, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989).

In *Nnoli v. Nnoli*, 101 Md.App. 243, 646 A.2d 1021 (1994), we observed that a master has historically been an

"adviser of the court as to matters of jurisdiction, parties, pleading, proof and in other respects where he may be of assistance to the court. . . . The duties of the master are of an advisory character only. He decides nothing, but merely reports to the court the result of his examination of the proceedings, with a suggestion as to the propriety of the court passing a decree."

*Id.* at 261 n. 5, 646 A.2d 1021 (quoting Edgar G. Miller, Jr. *Equity Procedure* § 556, at 654–55 (1897)). Thus, a judge "may never delegate away a part of the decision making function to a master—a non-judicial officer." *Wenger v. Wenger*, 42 Md.App. 596, 602, 402 A.2d 94 (1979). Consequently, even when a judge defers to a master's fact-finding, the judge does not defer to the master's recommendation as to the appropriate course of action. *Id.* at 606, 402 A.2d 94; *see also Ellis v. Ellis*, 19 Md.App. 361, 365, 311 A.2d 428 (1973).

A master is, however, an officer of the court, appointed by the circuit court; that court has constitutional authority to make such appointments. Md. Const. art. 4, § 9 ("The Judge, or Judges of any Court, may appoint such officers for their respective Courts as may be found necessary."); Md. Rule 2–541(a)(3) ("A master serves at the pleasure of

the appointing court and is an officer of the court in which the referred matter is pending."). Nevertheless, a master's status as an "officer of the court" does not confer judicial powers upon the master, such as the authority to hold someone in contempt, to sign a warrant, or to order a police officer to make an arrest. Indeed, "[a] master is not the trial judge. A master does not replace her or him." *Wise–Jones*, 117 Md.App. at 500, 700 A.2d 852. Thus, only a judicial officer may issue a warrant. Md. Rule 4–212(d). Because a master is not a judicial officer, and performs only ministerial functions, a construction of the rules that recognizes an implied power to order an arrest would run afoul of constitutional precepts.

. . . .

... [W]e shall strictly interpret Rule 2–541(c). Because the rule does not provide express authority to the master to arrest a litigant pending judicial review of the master's recommendations, we decline to expand the rule to authorize such power by implication.[4]

. . . .

Under Maryland Rule 9–207(f)(1), a circuit court generally may not enter an order based upon a master's recommendations until either the time for filing exceptions has expired or, if exceptions have been filed, until the court has ruled on the exceptions. There are two limitations, however. Maryland Rule 9–207(f)(2) provides that, in *pendente lite* matters, if the master finds that "extraordinary circumstances" exist, the court may direct the entry of an immediate order after reviewing the file or exhibits. Such an order "remains subject to a later determination by the court on exceptions." *Id.* The second exception concerns contempt, authorizing the court to hold a hearing and enter an order of contempt "at any time." Md. Rule 9–207(f)(3). This provision does not have the limitation that it is subject to later rulings on exceptions. Nevertheless, Master Patrick's recommenda-

---

**4.** This is not to suggest that this Court could by rule confer the power to arrest upon masters.

tions of contempt and immediate incarceration clearly were not self-executing. Rather, they were subject to review and implementation by a judge of the circuit court. *Domingues v. Johnson*, 323 Md. 486, 491–92, 593 A.2d 1133 (1991); *In re Darryl D.*, 308 Md. 475, 477 n. 2, 520 A.2d 712 (1987); *see also* Md. Rule 9–207; *cf. Caldor, Inc. v. Bowden*, 330 Md. 632, 658, 625 A.2d 959 (1993) (construing Md. Rule 911 with respect to juvenile masters).

The broad construction of the rule urged upon us by the State is also contrary to the history of the rule. Our review of the minutes from the Court of Appeals Standing Committee on Rules of Practice and Procedure indicates that the Committee was concerned about an unconstitutional delegation of judicial power to domestic masters. At its meeting on April 22, 1977, the Committee discussed Rule 596, the predecessor to Rule 2–541. It considered Judge William McCullough's letter to the Reporter dated March 10, 1977, suggesting "the amendment and enlargement of section g.1 (Time of Entry of Order—Immediate Order) to permit entry of immediate orders in other than pendente lite cases, including contempt." *Minutes from the Court of Appeals Standing Committee on Rules of Practice and Procedure* 3– 4 (April 22, 1977). The proposed section g.1 provided:

*g. Time of Entry of Order.*

*1. Immediate Order.*

*Subject to the later determination of the court on any exceptions, an order implementing the recommendation of a Master*

*(i) shall be entered immediately in accordance with a recommendation that alimony or child support be awarded, pendente lite, accounting from the date recommended by the Master; and*

*(ii) may be entered immediately, effective as of the date of the order, in accordance with a recommendation that visitation of minor children be awarded pendente lite, or that an existing decree or order be modified as to child visitation.*

The minutes also reflect the following debate concerning Judge McCullough's suggestion:

Mr. [now Judge] Rodowsky stated that he believed Judge McCullough's ... point was well taken, with respect to immediate orders, and that he proposed inclusion in the second line of subsection g. 1(ii) following "order,", the words "upon a master's determination of contempt,".

*Mr. Myerberg stated that such an amendment would raise a serious constitutional question, and that he believed it unconstitutional for a master to hold a party in contempt. Masters in Baltimore City have no such power.*

Mr. Owens and Judge McAuliffe agreed that in Montgomery County masters have no power to hold a party in contempt.

Mr. Myerberg asked how a master could hold a party in contempt of an immediate order, if the party had ten days within which to except to the master's report?

\* \* \* \*

*Mr. Myerberg stated that masters should have no jurisdiction in either custody or contempt matters, that these issues were too important to allow masters to determine them. The Chairman concurred that masters should not handle contempt matters.*

Judge Ross stated that in Baltimore City, Lucy Garvey had been handling contempt matters for years, and that it works well. He acknowledged, however, that although the master determines *prima facie* that a party is in contempt, a judge actually signs the order. Judge McAuliffe thereupon moved the deletion of subsection c. 4, and the motion was seconded. The Chairman called for a vote, and the motion carried on a vote of eight for to six against.

Mr. Myerberg acknowledged that the impact of deleting contempt from a master's jurisdiction will be tremendous, as it will throw back many cases onto judges, and

will only delay civil cases further. He reiterated his opinion, however, that it was simply not justice to allow a master to determine contempt.

\* \* \* \*

Mr. Rodowsky stated that the issue should probably be restated; *should the determination of contempt be heard only by a judge, or initially by a master, and be heard by a judge only on exception taken to the master's determination?*

There being several suggestions for a recount of the vote on Judge McAuliffe's motion to delete subsection c. 4, the Chairman called for a recount, which resulted in a vote of four for deletion to 10 against deletion, thereby reversing the prior result.

Judge Ross suggested that the proposed rule be referred back to the Subcommittee to draft a further amendment to subsection g. 1(ii), or the possible addition of a new subsection g. 1(iii) to provide for an immediate hearing on a master's citation for contempt, so as to negate that a party has ten days to file exceptions, and thus cannot immediately be held in contempt. After some further discussion, the proposed rule was referred back to the Subcommittee for the drafting of an amendment as suggested by Judge Ross.

*Minutes from the Court of Appeals Standing Committee on Rules of Practice and Procedure* 6–8 (April 22, 1977) (emphasis added).

At a subsequent meeting, the Committee approved a new subsection, then denominated Rule 596(g)(2). It provided: " 'A hearing on a recommendation by a master that an individual be found in contempt may be held by the court at any time'." Minutes from the Court of Appeals Standing Committee on Rules of Practice and Procedure 4 (November 19, 1977). Substantially similar language now appears in Maryland Rule 9–207(f)(3), to which we have already referred.

Petitioner's main disagreement with the decision below, as to this particular issue, is that under Rule 2–541(c), we should infer that a master has the power to order a deputy sheriff to detain the party the master is recommending be found in contempt "for the short time it takes for a circuit court judge to issue an order in accordance with the master's recommendation." To hold otherwise, petitioner avers, would inhibit the master's authority in controlling the proceedings before him or her.

Aside from the directly contrary points of law discussed *supra*, we believe petitioner's interpretation unworkable. For instance, petitioner would permit detention in the "short time" it would take for the master to seek out and find a judge to accept and order the master's recommendations. Problems would arise, however, if every judge in the courthouse were unavailable because he or she were entrenched in the middle of a trial or other proceeding, if the master's hearing were being held at an alternative time and all of the judges had left the courthouse for the day and thus were unreachable, or simply if the master could not find a judge within a few minutes. The "short time" it would take to secure a judge's approval of the master's recommendations could extend well into several hours as would the detention.

Notwithstanding the legal issues presented in this case, this Court also is concerned about the appearances of judicial authority a master may evoke by wearing a judge's robe and sitting behind the judge's bench, as did the master in this case. Although we think it clear from the rules and case law that masters have no judicial authority, the average person embroiled in a domestic matter may not understand the difference between a master and a judge.[5] As officers of the court and not members of the bench, masters should not

---

[5]. Experienced deputies such as those involved in the unfortunate events leading to this case believed the master had such authority. Indeed, the master's inappropriate attempt in this case to "sentence" petitioner and the master's "acting as a judge," in our view, may have provoked the affray that then resulted.

freely don judicial robes because, as we see it, such action imparts to the public the erroneous appearance of judicial power that can lead to what resulted in the case at bar. In concise summation, masters are not judges, nor are they judicial officers. Accordingly, they should not hold themselves out as such. Parties are entitled to understand clearly whether the person before whom they are appearing is a judge.

### B. Arrest Not Tantamount to Arrest Pursuant to a Warrant

We turn now to petitioner's next contention, which it unsuccessfully argued before the Court of Special Appeals, that even if masters do not have authority to order an arrest or detention of an individual, respondent's arrest in this case was "the functional equivalent of an arrest warrant." As such, the State argues, respondent had no right to resist that arrest under this Court's holding in *Rodgers v. State*, 280 Md. 406, 410, 373 A.2d 944, 946, *cert. denied*, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977), which we shall discuss in greater detail, *infra.*

We decline to adopt the State's reasoning. First, we note that a master, unlike a judicial officer such as a judge or District Court Commissioner, has no part in the process of issuing any warrant. Second, such a decision effectively would permit masters to do what we just said they cannot do: order an arrest. Third, the deputies' good faith belief that the master, a non-judicial officer of the court, has the authority to order an arrest cannot transform an unlawful, warrantless arrest into a legal, valid arrest made pursuant to a warrant. The State concedes this point but then persists:

> True enough, the subjective belief of a sheriff cannot make lawful what would otherwise be unlawful. Nonetheless, such beliefs and actions illustrate why the master's order should be viewed as analogous to an arrest pursuant to a warrant rather than a warrantless one. Surely if a circuit court judge had ordered a defendant to be detained on her verbal authority, the intermediate appellate court

would not have viewed it as warrantless simply because the warrant was not written. The situation here is no different.

The situation here most certainly is different. A master cannot issue a warrant, written or otherwise. In the present case, the order came from the master, not a *magistrate or judge.* Simply because the deputies honestly believed that Master Patrick had the authority to order them to take respondent into custody does not negate the fact that Master Patrick had absolutely no power to give that order. Additionally, without a warrant from a judge, "simple good faith on the part of the arresting officer is not enough.... If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects, only in the discretion of the police." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)(quotations and citations omitted). As the Court of Specials Appeals said, "[a] judicially authorized warrant is the cornerstone of the Fourth Amendment, and analogizing the situation in the case *sub judice* to an arrest pursuant to an invalid warrant denigrates the importance of the warrant to our constitutional framework." *Wiegmann,* 118 Md.App. at 347, 702 A.2d at 943. Accordingly, this argument fails.

## C. Right to Resist an Illegal Arrest

Chief Judge Murphy, in his dissent, makes a suggestion that merits serious consideration. This Court recognized in *Sugarman v. State,* 173 Md. 52, 57, 195 A. 324 (1937), the long-standing common law rule that "one illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary." *See also Barnhard v. State,* 325 Md. 602, 614, 602 A.2d 701, 707 (1992); *Diehl v. State,* 294 Md. 466, 479, 451 A.2d 115, 123 (1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983) (citing *Sugarman,* 173 Md. at 57, 195 A. 324); *Rodgers,* 280 Md. at 410, 373 A.2d at 946; *Williams v. State,* 204 Md. 55, 64, 102 A.2d 714, 718 (1954).

The modern trend, however, has been to limit the privilege of private citizens to resist arrest under certain circumstances. For instance, as we have previously indicated, this Court declined to extend the rule to cases in which an unlawful arrest was made under a facially deficient warrant, effectively carving out an exception to the common law right to resist an illegal arrest. *Rodgers*, 280 Md. at 421, 373 A.2d at 952. There, this Court stated: "We cannot believe that the General Assembly, having made peace officers agents of the court for the purpose of serving arrest warrants, could have intended that citizens arrested pursuant to such a warrant be free to dispute its validity by doing violence to the officer serving the judicial process." *Id.*

Relying in part on our reasoning in *Rodgers*, the Court of Special Appeals extended the *Rodgers* exception in *Barnhard v. State*, 86 Md.App. 518, 527–28, 587 A.2d 561 (1991), *aff'd*, 325 Md. 602, 602 A.2d 701 (1992), holding that a person did not have the right to resist an unlawful Terry stop. Similarly, the Court of Special Appeals in *State v. Blackman*, 94 Md.App. 284, 617 A.2d 619 (1992), held that the right to resist an arrest does not apply to situations in which the citizen was the subject of an illegal frisk. There the court stated:

> Close questions as to whether an officer possesses articulable suspicion must be resolved in the courtroom and not fought out on the streets. Albeit uttered in the different context of not permitting a "claim of right" to be asserted as a defense to robbery, the words of Judge Rodowsky in *Jupiter v. State*, 328 Md. 635, 616 A.2d 412 (1992), well express our disdain for permitting self-help by way of force and violence[:] "There are strong public policy reasons why self-help, involving the use of force against a person, should not be condoned."

*Blackman*, 94 Md.App. at 306–07, 617 A.2d at 630.

As we discussed extensively in *Rodgers*, the modern trend of many of our sister states is to reject the use of violence against arresting police officers. *Rodgers*, 280 Md. at 415, 373 A.2d at 949. *See also Glover v. State*, 88 Md.App. 393, 406–07, 594 A.2d 1224, 1231 (1991). The abolishment of the right to resist has occurred in some states by case law. *See, e.g.,*

*Miller v. State,* 462 P.2d 421 (Alaska 1969); *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977); *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974); *Casselman v. State,* 472 N.E.2d 1310 (Ind.Ct.App.1985); *State v. Austin,* 381 A.2d 652 (Me.1978); *Commonwealth v. Moreira,* 388 Mass. 596, 447 N.E.2d 1224 (1983); *In re Welfare of Burns,* 284 N.W.2d 359 (Minn.1979); *State v. Nunes,* 546 S.W.2d 759 (Mo.Ct.App. 1977); *State v. Doe,* 92 N.M. 109, 583 P.2d 473, *aff'd in part and rev'd in part,* 92 N.M. 100, 583 P.2d 464 (1978); *City of Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975); *State v. Gardiner,* 814 P.2d 568 (Utah 1991); *State v. Peters,* 141 Vt. 341, 450 A.2d 332 (1982); *State v. Valentine,* 132 Wash.2d 1, 935 P.2d 1294 (1997); *Roberts v. State,* 711 P.2d 1131 (Wyo.1985). The majority of the states we have canvassed that have abolished the common law right to resist arrest, however, have done so legislatively. *See, e.g.,* Ala.Code § 13A–3–28 (1994); Ark.Code. Ann. § 5–54–103 (1987, 1997 Supp.); Cal.Penal Code § 834a (West 1985); Colo.Rev.Stat. Ann. § 18–8–103 (West 1990); Conn. Gen.Stat. Ann. § 53a–23 (1997); Del.Code. Ann. tit. 11 § 464(d) (1995); Fla. Stat. Ann § 776.051 (West 1992 & 1998 Supp.); Haw.Rev.Stat. Ann. § 710–1026 (1993); Ill. Comp. Stat. Ann. 5/7–7 (West 1993); Iowa Code Ann. § 804.12 (West 1994); Kan. Stat. Ann. § 21–3217 (1988); Ky.Rev.Stat. Ann. § 520.090 (Michie 1985); La. Rev.Stat. Ann. § 14:108 (West 1986 & 1998 Supp.); Miss.Code Ann. § 97–9–73 (1994); Mont.Code Ann. § 45–3–108 (1997); Neb.Rev.Stat. § 28–1409(3) (1995); Nev.Rev.Stat. § 28–904 (1995 & 1997 Supp.); N.H.Rev.Stat. Ann § 594:5 (1986); N.J. Stat. Ann. § 2C:29–2 (West 1995 & 1998 Supp.); N.Y. Penal Law § 35.27 (Consol.1984); N.D. Cent.Code § 12.1–05–03(1) (1997); Or.Rev.Stat. § 161.260 (1997); 18 Pa. Cons.Stat. Ann. § 505(b)(1)(i) (West 1983); R.I. Gen. Laws § 12–7–10(a) (1994); S.C.Code Ann. § 22–11–5 (Law Co-op.1988); S.D. Codified Laws § 22–11–5 (Michie 1988); Tex. Penal Code Ann. § 38.03 (West 1994).

Petitioner comes now before this Court and asks us to abolish the long-standing rule that permits a person to resist an unlawful arrest in most circumstances, the position suggested by Chief Judge Murphy's dissent below. In its brief, the State argues after discussing the abrogation of the privilege in other jurisdictions and the limitations imposed by this Court:

It seems particularly wrong that a person should be able to resist an arrest made [as in this instance] by two deputy sheriffs, in a courtroom, pursuant to a master's order. Citizens should no longer be permitted to get into fights with police officers over whether they are going to be taken into custody and, depending upon an after the fact court determination of probable cause to arrest, be rewarded with a not guilty verdict. It strains credulity to believe that few, if any, persons who resist warrantless arrests know this loophole in the law, let alone have sufficient knowledge of the concept of probable cause to enable them to make an assessment during the heat of an arrest situation. The safety and lives of both officers and arrestees are at stake, and now is the time to abolish the so-called "right" or "privilege" to resist arrest in the State of Maryland. [Footnote omitted.]

Respondent, on the other hand, contends that "any action to abrogate the common law right to resist an illegal warrantless arrest should be made by the Legislature."

Under the principle of *stare decisis*, "for reasons of certainty and stability, changes in decisional doctrine ordinarily should be left to the Legislature." *Boblitz v. Boblitz*, 296 Md. 242, 273, 462 A.2d 506, 521–22 (1983) (citing *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 456 A.2d 894 (1983)). Nonetheless, *stare decisis* does not preclude this Court from changing a common law rule where, "in light of changed conditions or increased knowledge, ... the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people." *Harrison*, 295 Md. at 459, 456 A.2d at 903. *See also Gaver v. Harrant*, 316 Md. 17, 28, 557 A.2d 210, 216 (1989); *State v. Minster*, 302 Md.

240, 245–46, 486 A.2d 1197, 1199–1200 (1985); *Williams v. State,* 292 Md. 201, 217, 438 A.2d 1301, 1309 (1981); *Felder v. Butler,* 292 Md. 174, 182–83, 438 A.2d 494, 499 (1981); *Adler v. American Standard Corp.,* 291 Md. 31, 42–43, 432 A.2d 464, 471 (1981); *Condore v. Prince George's County,* 289 Md. 516, 530–31, 425 A.2d 1011, 1018 (1981); *Kline v. Ansell,* 287 Md. 585, 590, 414 A.2d 929, 931 (1980); *White v. King,* 244 Md. 348, 354, 223 A.2d 763, 767 (1966).

This Court has recognized that in determining whether a long-standing common law rule now conflicts with modern policy, the declaration of public policy normally is the function of the Legislature. *Harrison,* 295 Md. at 460, 456 A.2d at 903; *Felder,* 292 Md. at 183, 438 A.2d at 499. In that same vein, we have said that the Legislature's failure to change a common law rule is reflective of this state's public policy. *Harrison,* 295 Md. at 460, 456 A.2d at 903.

■■■ Upon deliberating whether to change judicially the common law, we first must consider whether the existing rule, here the right of a person illegally arrested to resist such arrest, "is 'unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people,'" *Gaver,* 316 Md. at 29, 557 A.2d at 216 (quoting *Harrison,* 295 Md. at 459, 456 A.2d at 903), when ordinarily such a determination is made by the legislature. This consideration must be made by analyzing "the public policy concerns raised by the parties and by the other courts which have grappled with this issue." *Gaver,* 316 Md. at 30, 557 A.2d at 217.

Petitioner essentially argues the right to resist an unlawful arrest should be abrogated on public policy grounds because it promotes violent interactions between peace officers and the public, few people actually are aware of or are able to contemplate use of the rule during the heat of an arrest situation, and the rule endangers the safety and lives of officers and arrestees. Petitioner also cites to the various cases and legislative enactments of our sister states that already have abolished the common law rule. Respondent does not counter petitioner's policy arguments other than to assert that most of the states

that have abolished the right to resist have done so legislatively, and that the Legislature is the proper entity to abrogate the common law rule, particularly given our discussion of some of the negative aspects of this rule in *Rodgers* and the Legislature's failure thereafter to make any changes responsive to our concerns.

We believe the points raised by petitioner have merit. We cannot say, however, that the right to resist is unsound or unsuitable to a modern society. Were we to abrogate the common law rule, the only remaining remedies for an unlawful arrest would be release followed by a civil or criminal action, such as an action for false imprisonment. We have said that such remedies often may be inadequate. *Rodgers*, 280 Md. at 421, 373 A.2d at 952.

Furthermore, the Legislature is presumed to be cognizant of the holdings of our cases, including *Rodgers*, which was decided over twenty years ago. Even though we have criticized several aspects and outcomes of the application of the right to resist, the Legislature has failed to respond to this criticism as it has yet to alter or abolish the common law privilege in spite of the period of time this issue has been discussed in our cases. This position of deference to the Legislature, where appropriate, is consistent with many of our cases. *See generally Harrison*, 295 Md. at 463, 456 A.2d at 905 (declining to judicially alter doctrine of contributory negligence in favor of comparative negligence because the Court was "unable to say that the circumstances of modern life have so changed as to render contributory negligence as vestige of the past" and is instead a "fundamental and basic policy consideration[ ] properly to be addressed by the legislature."); *Stewart v. Hechinger*, 118 Md.App. 354, 359–60, 702 A.2d 946, 949 (1997), *cert. denied*, 349 Md. 104, 707 A.2d 90 (1998) (quoting *Harrison*, 295 Md. at 460, 463, 456 A.2d at 903, 905). *But see Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 157, 497 A.2d 1143, 1159 (1985)(recognizing action in strict liability for manufacturers and marketers of "Saturday Night Specials," in derogation of common law).

In our opinion in *Kelley*, however, we were able to perceive from State Legislative and Congressional enactments a public policy and relied on that legislative policy in our recognition of a cause of action in strict liability for the manufacturer of those particular weapons. The parties in this case have pointed us to no similar legislative pronouncements with respect to the matter of the abolishment of the right to resist an unlawful arrest. Further, as we have indicated, of those states that have abolished the right to resist an illegal arrest, the majority have done so by legislative enactment.

■ Accordingly, we decline to abolish the long-standing common law privilege permitting persons to resist an illegal warrantless arrest. We believe this change is best left to the Legislature and its primary power to, in the first instance, declare the public policy of this state.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS THAT IT REMAND TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; PETITIONER TO PAY THE COSTS.**

Dissenting opinion by CHASANOW, J.

CHASANOW, Judge, dissenting.

I respectfully dissent. The Court holds a defendant, who had just been determined to be in contempt by a domestic relations master, may assault a uniformed deputy sheriff in the courtroom because the deputy carried out the master's unlawful order to detain the defendant. Condoning such violence during a family court hearing, often attended by children, is not a good way to engender respect for the law or the courts.

In the instant case, we need not reevaluate the common-law rule that allows a person to use force to resist an arrest initiated by a law enforcement officer who is acting without probable cause; there is simply no justification for extending

that limited doctrine to permit using force to resist a detention ordered by a robed domestic relations master presiding over a courtroom. A defendant should not be permitted to assault a uniformed sheriff in a courtroom while the court is in session, even if the defendant's detention was improperly ordered by a domestic relations master.

The Court holds, for the first time, that a domestic relations master has no power to order the immediate detention of an individual that the master adjudicates to be in contempt. While I do not dissent from that holding, the order of the master in the instant case was not a gross abuse of authority. Moreover, any limitations on the master's authority were not known to the defendant or the deputy sheriff. In courts with domestic relations masters, all non-support contempt cases are referred to the master as a matter of course. Maryland Rule 9–207 provides:

"a. *Referral.* (1) As of Course. In a court having a master appointed for the purpose, unless the court directs otherwise in a specific case, the clerk shall refer the following matters arising under this Chapter to the master as of course when a hearing has been requested or is required by law:

\* \* \*

(G) Contempt by reason of noncompliance with an order or judgment relating to the payment of alimony or support or the possession or use of the family home or family-use personal property, following service of a show cause order upon the person alleged to be in contempt. . . ."

That same rule goes on to provide that, if a master determines someone is in contempt for not complying with a support order, the circuit court may hold an immediate hearing: "Contempt Orders. On the recommendation by the master that an individual be found in contempt, the court may hold a hearing and direct the entry of an order at any time." Md. Rule 9–207f(3). Finally, although the rule is probably

only applicable to juvenile causes, the Maryland Rules have authorized masters to order immediate detention subject to ratification by the circuit court. Maryland Rule 11–111 provides, in pertinent part:

"a. *Authority.*  1.  Detention or shelter care.  A master is authorized to order detention or shelter care in accordance with Rule 11–112 (Detention or Shelter Care) subject to an immediate review by a judge if requested by any party."

A master garbed in a black robe presiding over contempt hearings in a courtroom has at least colorable authority to order the detention of a person determined to be in contempt. If, in open court, the master issues an order to detain a person found in contempt, a deputy sheriff assigned to that courtroom should not be required, for his or her own safety, either to disobey the order or to get some definitive determination of the master's authority. Every judge and master who presides over domestic relations cases recognizes the volatile nature of some of those proceedings and the need for courtroom security. By approving of an assault on a courtroom security officer who followed the order of the presiding judicial official, this Court may cause unanticipated problems.

Because we permit individuals to resist law enforcement officers who on their own initiative make arrests which are not based on probable cause does not mean we should authorize force to resist a detention ordered in open court after a contempt finding by the presiding domestic relations master garbed in a black robe. Sheriffs generally are not trained to assess the validity of orders issued by those empowered to hold judicial hearings in a courtroom; they are trained to obey the orders of the presiding judicial official. The problem in the instant case was not created by the officer assigned to courtroom security, but by the master's mistake. Whenever a deputy sheriff providing security in a courtroom obeys the order of the presiding judge or master to detain an individual, the deputy should not be open to assault even if the judge or master was mistaken. Authorizing resistance by force in a courtroom will serve no public purpose, will diminish respect for the courts, and will only result in escalating violence

because there are generally enough deputy sheriffs in a courthouse to assure that resistance will be overcome by superior force. By approving the right to use violence to disobey the erroneous directive of a judicial official, this Court seems to give little importance to the necessity of maintaining order in court proceedings.

The majority apparently ignores the important distinction we made previously between an arrest for a crime and a detention based on a judicial directive. Although the master was wrong in issuing the detention order, the sheriff who was assaulted was not wrong in obeying it. That detention based on a direct order following a contempt hearing is much more akin to an arrest based on an invalid warrant issued by a commissioner than to an arrest without probable cause initiated by a law enforcement officer. Although there is a common-law right to resist the latter form of unlawful arrest, we have not extended that right to permit resistance to the former type of unlawful arrest.

In *Rodgers v. State*, 280 Md. 406, 373 A.2d 944, *cert. denied*, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977), this Court distinguished between a situation where an arrest is based on inadequate probable cause by the officer who made the decision to arrest and a situation where an officer makes an arrest based on a defective warrant. In refusing to extend the right to resist an unlawful arrest in the latter situation, we held:

"At least where a citizen resists with force an illegal arrest made by a police officer without a warrant, that force is directed at the individual responsible for the improper deprivation of the citizen's liberty; but the officer engaged in carrying out the mandate of a court that he arrest an individual named in a warrant is blameless if that warrant has been issued in error, and it would be a betrayal of our duty to such an officer to say that the citizen is entitled to inflict injury on the officer because the courts had erred in issuing the warrant."

*Rodgers*, 280 Md. at 418–19, 373 A.2d at 951.

In *Rodgers*, the defendant resisted an arrest "made upon a warrant that was defective on its face." 280 Md. at 407, 373

A.2d at 945. The warrant was obviously invalid because it charged the nonexistent crime of assault over the telephone. We acknowledged that "the arrest was illegal as a matter of law." *Id.* At his trial for resisting arrest, Rodgers made a motion for judgment of acquittal alleging that, since his arrest was unlawful, he was thereby entitled to use reasonable force to resist it. In the Circuit Court for Baltimore City, Judge Robert Karwacki (later a member of this Court) roundly rejected the defense argument:

" 'It's a question of where you challenge it. What I am saying, when a citizen who is approached by a uniformed police officer who makes his identity known to the Defendant under arrest and pursuant to the command of a judicial officer, that citizen must submit to the arrest and has no power or no right to resist that arrest pursuant to a warrant properly issued by a judicial officer. To rule otherwise, I think, would be to invite chaos.' "

*Rodgers,* 280 Md. at 409, 373 A.2d at 946.

We began our analysis in *Rodgers* by noting the general trend away from condoning force to resist an unlawful arrest. We pointed out that some states have reacted "by totally repealing the common law rule permitting resistance to illegal arrests and ordaining that a citizen submit to any arrest by a known police officer and then pursue his grievance in the courts." *Rodgers,* 280 Md. at 415, 373 A.2d at 949. We also cited substantial case law that impliedly repealed the common-law right to resist a warrantless arrest made without probable cause. We further pointed out that the "right to resist any arrest by a peace officer has been abolished by statute" in California, Delaware, Illinois, New Hampshire, New York, and Rhode Island. *Id.*

Our *Rodgers* decision followed the numerous jurisdictions that, although not yet abolishing the common-law right to resist an unlawful warrantless arrest, have nonetheless refused to extend that right of resistance to a situation where the unlawful arrest was based on a warrant, even a facially invalid warrant. Analyzing the reasons for this movement

away from the earlier common-law rule, we quoted with approval from a 1958 address to the American Law Institute by Judge Learned Hand:

> " 'The idea that you may resist peaceful arrest ... because you are in debate about whether it is lawful or not, instead of going to the authorities which can determine, ... [is] not a blow for liberty but on the contrary, a blow for attempted anarchy.' 1958 Proceedings, American Law Institute, at 254."

*Rodgers*, 280 Md. at 418, 373 A.2d at 950–51.

In advocating "the orderly judicial process" rather than violent self-help in dealing with an illegal arrest, our decision was based on "discouraging violence."

> "We are not unmindful that under present conditions the available remedies for unlawful arrest—release, followed by civil or criminal action against the offender—often may be inadequate. This circumstance, however, does not elevate physical resistance to anything other than the least effective and least desirable of all possible remedies; as such, its rejection, particularly when balanced against the State's interest in discouraging violence, cannot be realistically considered a deprivation of liberty."

*Rodgers*, 280 Md. at 421, 373 A.2d at 952. One of the cases cited with approval in *Rodgers* was a decision of the Court of Appeals of North Carolina in *State v. Wright*, 1 N.C.App. 479, 162 S.E.2d 56, *aff'd*, 274 N.C. 380, 163 S.E.2d 897 (1968). In that case, the defendants were convicted of resisting a public officer who had attempted to arrest them on a *capias*. On review, the court found that the *capias* was defective in that it charged the crime of "failure to comply with a court order," which was not an offense under North Carolina law. The North Carolina court held that the defendants were not entitled to resist the officers' attempt to take them into custody. The court said:

> "When an officer attempts to make an arrest without a warrant and in so doing exceeds his lawful authority, he may be resisted as in self-defense and in such case the

person resisting cannot be convicted under G.S. § 14–223 of the offense of resisting an officer engaged in the discharge of his duties. *State v. Mobley,* . . . [240 N.C. 476] 83 S.E.2d 100 [ (N.C.1954) ]. But when an officer is acting under authority of process of a court, a different situation exists. In such case if the writ is sufficient on its face to show its purpose, even though it may be defective or irregular in some respect, yet the officer is protected. It would be monstrous to lay down a different rule. It would put in jeopardy the life of every officer in the land. It never could be intended that they should determine, at their peril, the strict legal sufficiency of every precept placed in their hands." (Internal citations and quotations omitted).

*Wright,* 162 S.E.2d at 62. That case, already cited with approval by this Court, as well as our holding in *Rodgers,* should control the resolution of the issue in the instant case.

Perhaps another reason for prohibiting the defendant's use of force in the instant case is that the defendant was not being illegally arrested for a crime but was only being briefly detained until the matter could immediately be brought before a circuit court judge. That distinction between an illegal arrest for a crime and a brief illegal detention was found significant in several recent Court of Special Appeals decisions. In *Barnhard v. State,* 86 Md.App. 518, 587 A.2d 561 (1991), *aff'd,* 325 Md. 602, 602 A.2d 701 (1992), the Court of Special Appeals refused to extend the right to resist an unlawful warrantless arrest to situations involving an unlawful *Terry* detention. That court reasoned:

"Much of the underlying rationale in *Rodgers* for restricting the right to resist arrest is applicable here. If it were not, police officers would be subject to attack in every instance when, during the course of their investigation, they temporarily detain someone. To recognize the right to resist such momentary seizures, short of an arrest, serves only to expand the danger of violence. In keeping with the rationale set out in *Rodgers,* we conclude that there is no right to resist an 'illegal' stop."

*Barnhard,* 86 Md.App. at 527–28, 587 A.2d at 566. Moreover, in *State v. Blackman,* 94 Md.App. 284, 617 A.2d 619 (1992), the Court of Special Appeals, relying on *Rodgers* and *Barnhard,* refused to extend the right to resist an unlawful warrantless arrest to situations involving an unlawful "frisk" for weapons.

The majority abandons the foundation for our decision in *Rodgers* in favor of violence as a permissible way to challenge judicial orders. In *Rodgers,* as in the instant case, we were concerned with an arrest that was illegal because a judicial appointee, not the arresting officer, acted mistakenly. There, we explained our reason for differentiating between the right to use violence against an officer who is responsible for initiating an illegal arrest and a situation, similar to the one in the instant case, where the officer makes an arrest based on a judicially issued warrant that is defective through no fault of the officer:

"At least where a citizen resists with force an illegal arrest made by a police officer without a warrant, that force is directed at the individual responsible for the improper deprivation of the citizen's liberty; but the officer engaged in carrying out the mandate of a court that he arrest an individual named in a warrant is blameless if that warrant has been issued in error, and it would be a betrayal of our duty to such an officer to say that the citizen is entitled to inflict injury on the officer because the courts had erred in issuing the warrant. Indeed, to sanction resistance to arrest under these circumstances would be to invite the very destruction of the entire judicial process, for we would then impose upon every police officer commanded by a warrant to make an arrest the duty to make his own independent judgment as to whether the judicial officer had properly performed his duty in issuing the warrant. Such a practice would make a mockery of the courts and place an impossible burden on police officers, who, however well trained in the performance of their police duties, cannot be expected to have sufficient training in the law to make a reasoned judgment as to whether the face of every arrest warrant contains any fatal defect or irregularity."

280 Md. at 418–19, 373 A.2d at 951. That well-reasoned pronouncement by this Court is directly on point and should control the disposition of the instant case. I respectfully dissent.