CANDICE FRANCES ELLIS *v.* HAROLD
ALVIN ELLIS

[No. 75, September Term, 1973.]

*Decided November 23, 1973.*

362

The cause was argued before MORTON, POWERS and DAVIDSON, JJ.

*Glenn B. Harten* for appellant.

*Bond L. Holford* for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal by the mother of a five year old daughter from an order issued in the Circuit Court for Prince George's County, entitled "Order Amending Final Decree of Divorce," under which it was directed that the final divorce decree be "modified and that the natural father, Harold Alvin Ellis, be awarded custody of the parties' infant child, Stella Francesca Ellis, with reasonable rights of visitation granted to the mother, Candice Frances Ellis." It was further ordered that the provision for child support be stricken from the final divorce decree.

It appears that the appellant was granted a divorce from the appellee on July 2, 1969, and was awarded custody of their then two year old child. On November 17, 1972, the father, through appropriate pleadings, sought to gain custody of the child on the ground of the mother's unfitness. The issue was referred to a domestic relations Master who conducted an extensive hearing at which a number of witnesses testified on behalf of the parties and on December 18, 1972, the Master filed a report in which he recommended that custody of the child be awarded to the father.

Thereafter, the appellant filed exceptions to the Master's report and the appellee filed objections to the exceptions. The matter came on for hearing before the Chancellor on January 29, 1973. The Chancellor refused to permit the appellant to amend the exceptions and overruled them on the ground that they did not conform to the requirements of the local rules. The next day the Chancellor filed the order which is the subject of this appeal. Here, it is contended that

the Chancellor erred in overruling the exceptions and in awarding the custody of the infant child to the father rather than allowing the child to remain in the mother's custody.

We do not reach these contentions because there would appear to be, on the record before us, a fundamental and crucial missing link in the judicial process with respect to the proceedings below, for it would appear that there was no evidence or testimony before the Chancellor at the time he signed the order awarding custody of the child to the father from which he could make a knowing and intelligent judgment concerning what actions should be taken which would best serve the interests and welfare of the infant child of the parties.

It is clear from the record that the Chancellor did not have before him a transcript of the testimony taken before the Master, Domestic Relations Causes, on December 14, 1972, since the request for such a transcript was not made until the appellant's solicitor filed such a request on March 9, 1973, so that it "may be included as a part of the record that goes to the Court of Special Appeals." It is equally clear that the so-called report of the Master contained no summary of the testimony adduced at the hearing and set forth no findings or basis for his recommendation. In fact, the report was simply a recommendation, without supportive reasons of any nature, that custody of the child be awarded to the father and that the child support provision in the original divorce decree be stricken.

Rule S80 b and c of the "Court Rules — Seventh Judicial Circuit of Maryland" provides, in pertinent part:

"b. REFERRAL.

The Clerk of Court shall refer to the Master for Domestic Relations Causes the following actions in which a hearing has been requested on a Bill or Petition:

\* \* \*

2. For modification of existing orders or decrees to increase or decrease the amount of

alimony or child support, or to change the custody of minor children or provisions for child visitation;

* * *

c. DUTIES.

### 1. FILING OF RECOMMENDATION — NOTICE TO PARTIES.

The Master shall hear testimony and argument, unless waived, of counsel in all actions and thereafter promptly file in the proceedings his recommendation to the Court, duly signed by him. The Master shall at the same time notify each party to the action, or his counsel, of his recommendation by mailing a copy thereof, by ordinary mail, postage prepaid, to the address indicated in the pleadings.

### 2. FILING OF ORDER WHERE NO EXCEPTIONS.

Unless exceptions to the Master's findings and recommendation are filed within the time permitted by this Rule, the Master shall, after the expiration of such time, place in the Court file for consideration by the Court an appropriate order in accordance with his recommendation.

* * *

### 3. FILING OF STENOGRAPHIC TRANSCRIPT OF RECORDING.

In divorce, annulment or separate maintenance actions heard by the Master there shall be filed in the proceedings either the stenographic transcript, or recording from a mechanical recording device, of the hearing."

It is to be noted that the Rule makes no provision for the filing of a stenographic transcript or recording in cases of child custody and it would appear that none had been filed in the proceedings below at the time the Chancellor's order was

entered. In fact, counsel for both parties to this appeal advised us at the time of argument before this Court that none had been filed.

If, as we can only assume from the state of the record before us, the Chancellor below had no evidence or testimony before him from which to make a determination of the status or the respective living conditions of the mother and father, which determination would be a *sine qua non* to an intelligent judgment of what course of action would be in the best interest of the infant child of the parties, a gross miscarriage of justice has occurred. Litigants in a child custody proceeding, as in all judicial proceedings, are entitled to have their cause determined ultimately by a duly qualified judge of a court of competent jurisdiction. Md. Const., Art. IV, § 1; Md. Code, Art. 26, § 30; Md. Rule 71 a. While the system of resorting to Masters is one of long standing [1] and undoubtedly has salutary effects resulting in the more expeditious dispatch of the judicial process, the system cannot supplant the ultimate role of judges in the judicial process itself.

As long ago as 1829, Chancellor Bland in *Townshend v. Duncan*, 2 Bland 45, traced the long history of Masters in Chancery. In outlining their functions and responsibilities, he concluded, at 57: "The report of a master ought to be without any unnecessary recitals, as succinct as may be; and confined to that which has been referred to him; for as to all else, it may be treated as a nullity; and it should reserve the matter clearly for the judgment of the Chancellor, who alone is the judge."

Miller, in his work on *Equity Procedure* (1897), points out, at 654-655: "The duties of the master are of an advisory character only. He decides nothing, but merely reports to the court the result of his examination of the proceedings [footnote omitted], with a suggestion as to the propriety of the court passing a decree."

The Court of Appeals in *Bris Realty v. Phoenix*, 238 Md.

---

1. See *Townshend v. Duncan*, 2 Bland 45; Miller, *Equity Procedure*, page 654.

84, 89, citing Miller, *Equity Procedure,* at 654, observed that a Master, "properly called an auditor and master, is an adviser of the court, *makes findings,* reports to the court and suggests the nature and propriety of the decree." (Emphasis supplied.) The Court went on to say that "a master's findings are *prima facie* correct." Exceptions, when taken, "should point out the particular error or errors objected to and general exceptions cannot be considered."

While it is true that the Chancellor below overruled the appellant's exceptions on the ground they lacked specificity, he did so without, apparently, ever reviewing the evidence and testimony taken before the Master. His action in signing the order was no more than a *pro forma* adoption of the Master's recommendation. The appellant, in our opinion, was entitled to more than this under our judicial system. It was her right, not accorded here, to have an independent review by the Chancellor of the evidence and testimony taken before the Master, and it was her right to have the benefit of the Chancellor's judgment, as distinguished from the Master's, alone, whether the best interests of the child lay in awarding custody to the mother or to the father.

Strangely enough, local Rule S80 does not require the Master in child custody cases to file in the proceedings a stenographic transcript or recording of the hearing as it does in divorce, annulment, or separate maintenance actions. This is a distinction we are at a loss to comprehend since we can think of no more important function to be exercised by a Master or Chancellor than determining the custodial welfare of a child. If the Rule were intended to give the Chancellor the benefit of the testimony taken before the Master in divorce, annulment and separate maintenance actions, but to withhold such benefit in child custody cases, we think the Rule fails to accord the parties in such cases that which is their due in our form of judicial process. After all, it has long been established that the State, under our form of government, stands in its relationship to minors as *parens patriae.* See *Thistlewood v. Ocean City,* 236 Md. 548; also 67 C.J.S. *Parens Patriae* 624. And rule or no rule, parties in child custody cases are entitled to have the carefully and

intelligently exercised judgment of the Chancellor, as distinguished from that of the Master's, alone. Without having at least reviewed the testimony and evidence adduced at the hearing before the Master, the Chancellor clearly was in no position to fulfill his judicial obligation to the parties. Nor is this Court in a position properly to discharge its function since in a case involving custody of a child, when our appellate review of a Chancellor's action is invoked, we do not merely review the findings and order of the Chancellor but must review the evidence before the Chancellor and make an independent assessment of it. We cannot here review the facts before the Chancellor because there were none. *Deckman v. Deckman,* 15 Md. App. 553. Moreover, the Chancellor did not even have the benefit of any so-called "findings" of the Master (see *Bris Realty v. Phoenix, supra*), a requirement which the local rule does not compel in child custody cases, although a "finding" as well as a "recommendation" is required of a Master for Juvenile Causes. See local Rule 925.

While it may be that the appellant, in filing her exceptions to the Master's report, did not do so with that specificity prescribed by Rule S80 f 4, it is perfectly clear that she was completely dissatisfied with the recommendation of the Master that she forfeit custody of her child. Compelling compliance with the Rule would appear to be far more desirable than invoking a sanction at the expense of the child's welfare, which was certainly the sanction here when the Chancellor routinely and automatically adopted, without any knowledge of the status, circumstances and living conditions of the parents, the recommendation of the Master that custody of the child be taken from the mother and awarded to the father.

Under the circumstances, we see no other recourse than to remand the case to the Circuit Court for Prince George's County with directions that the appropriate Chancellor in that court reconsider the order of January 30, 1973, in light of the now available testimony and evidence adduced at the hearing before the Master, Domestic Relations Causes, and issue such further order as the evidence and testimony

would dictate to be in the best interest and welfare of the infant child of the parties. See *Deckman v. Deckman, supra,* 563-567.

*Case remanded for further proceedings not inconsistent with this opinion.*
*Costs to be paid by appellee.*