FLORENCE MITCHELL RAND *v.* ROBERT C. RAND

[No. 59, September Term, 1976.]

*Decided November 5, 1976.*

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*John T. Bell,* with whom were *Frank S. Cornelius, Elbert R. Shore, Jr.* and *Bell & Cornelius* on the brief, for appellant — cross-appellee.

*Allen J. Katz* and *George W. Young, Jr.* for appellee — cross-appellant.

MENCHINE, J., delivered the opinion of the Court.

A decree passed by the Circuit Court for Montgomery County on March 17, 1971, *inter alia,* required Robert C. Rand (Robert) to pay $250.00 monthly for the support and maintenance of a minor child, Virginia Rand (Virginia) and to pay $75.00 monthly as alimony to Florence Rand (Florence).[1]

On August 7, 1975, Florence filed a petition to increase child support. On September 11, 1975, Robert filed a petition for modification of alimony. The petitions were referred to a Domestic Relations Master pursuant to Sixth Circuit Rule S74.b.(ii).[2]

The petitions were consolidated and heard together by the Master on October 27, 1975. The Master's report detailed his findings of fact and recommended that the court pass an order: (a) requiring Robert to pay $480.00 monthly for the support and maintenance of the minor child of the parties

---

1. Decree affirmed as to parts here pertinent in Rand v. Rand, 13 Md. App. 574, 284 A. 2d 271 (1971).

2. Rule S74.b.(ii) reads as follows:

"The Court in its discretion, shall direct the Clerk to refer to the Domestic Relations Master actions in which a hearing has been requested, including but not limited to the following. A bill or petition:

(ii) for modification of existing orders or decrees to increase or decrease the amount of alimony or child support, or to change the custody of minor children or provisions for child visitation; . . ."

and (b) terminating the payment of alimony by Robert to Florence subject to reconsideration upon future showing of need and a substantial change of the financial circumstances of the parties.[3] Exceptions to the Master's report were filed by both Florence and Robert. Both sought further hearing in the Circuit Court for Montgomery County.

On December 9, 1975, the chancellor passed the following order:

> "The Court has read and considered the plaintiff's and defendant's Exceptions to the Report of the Domestic Relations Master. The Court has further considered the report itself with accompanying exhibits and has generally reviewed the two files. Exceptions to the findings of a Master will not be sustained except in the case of clear error or unless he misapplies the law.

>> 'Exceptions to a report of an auditor or Master will not be sustained unless his findings of fact from the evidence are clearly erroneous or unless he misapplies the law in his findings of fact.' *Bris Realty Co. vs. Phoenix Savings and Loan Association, 238 Md. 84.*

>> 'A Masters finding of fact from the evidence are prima facie correct and they are not to be disturbed unless determined to be clearly erroneous.' *Bar Association vs. Marshall, 269 Md. 510.*

> "The Court finds no clear error or misapplication of the law in this case and it is therefore, this 9th Day of December, 1975, by the Circuit Court for Montgomery County, Maryland,

> "ORDERED that the Exceptions filed by the plaintiff and defendant are hereby overruled and that the request for a hearing in open court is denied and it is further

> "ORDERED that the defendant's counsel

---

3. Florence does not on this appeal contest the termination of alimony.

promptly prepare an Order in accordance with the findings of the Domestic Relations Master."

A subsequent order of the Circuit Court for Montgomery County passed on January 6, 1976, reads as follows:

"ADJUDGED, ORDERED and DECREED, that the Plaintiff, Robert Collom Rand, pay to the Defendant, Florence Mitchell Rand, for support and maintenance of the minor child of the parties, namely, Virginia Rand, the sum of Four Hundred Eighty Dollars ($480.00) per month, commencing and accounting from September 1, 1975, and a like sum on the first day of each succeeding month, pending further order of this Court; and, it is, further,

"ORDERED, that the payment of alimony by the Plaintiff to Defendant shall be, and the same is hereby, terminated; however, the Court shall retain continuing jurisdiction for reconsideration thereof upon showing of a need and a substantial change in the financial circumstances of the parties, and it is, further

"ORDERED, that in all other respects the Decretal Order of March 17, 1971, will remain in full force and effect, except as hereby provided for and modified."

Both Florence and Robert have appealed. Both attack the chancellor's refusal to grant a hearing in the circuit court.

### Rejection of Requested Hearing

Sixth Circuit Rule S74.f.4. reads as follows:

"HEARING BEFORE THE COURT.

Upon the filing of exceptions pursuant to this section, the proceedings shall be referred to the Court. The Court shall then rule upon the exceptions on the record, unless it shall determine that a hearing is required, in which event the Court

shall refer the proceedings and the exceptions to the Assignment Office for the scheduling of a hearing on the exceptions and the notification of counsel."

Florence's initial attack is more basic than Robert's. Pointing out that Maryland Rule 1.f.1. prohibits local rules that are inconsistent with the Maryland Rules, she contends that Sixth Circuit Rule S74.f.4. is in conflict with Maryland Rule 321.d. Maryland Rule 321.d reads as follows:

"d. DISPOSITION.

The court may decide *demurrers and motions* (except motions for a new trial or for judgment n. o. v.) without a hearing unless a party requests a hearing at the time or within fifteen days after the demurrer, motion or reply is filed. A request for hearing shall be in writing and may be either a separate pleading, or incorporated in the body of the demurrer, motion or reply at the end thereof under an appropriate heading." (Emphasis added.)

The issue, in short, raised in the first prong of Florence's attack, requires determination as to whether Rule 321.d was intended to encompass exceptions to the report of a Master and thus to confer a right to a court hearing upon timely application therefor. We think that it was not.

The antiquity of the office of Master is the subject of lengthy explication in *Townshend v. Duncan*, 2 Bland 45 (1828), in the course of which it was said at 55-57:

"In England, the officers called masters in Chancery are assistants and associates to the Chancellor; and two of them at a time, by turns, usually sit with him in Court. They have the power to administer oaths, take affidavits, and acknowledgments of deeds, recognizances, &c. 1 *Harri. Prac. Chan.* 73. It is the duty of a master to execute the orders of the Court upon references made to him by it, acting either in exercise of its original jurisdiction, or under the authority of any Act of Parliament. The heads of reference that may

be made to a master are almost as numerous as the matters subject to the jurisdiction of the Court.

\* \* \*

"In general, there is no question of law or equity, or disputed fact, respecting which a master may not be called upon to make a report, . . . .

\* \* \*

"If, however, a master is directed to ascertain a particular fact, he ought himself to draw the conclusion from the evidence before him, and not merely to state the circumstances. *Lee v. Willock*, 6 *Ves.* 605."

In Miller, *Equity Procedure* (1897) § 555, page 653, it is said:

"'A master in chancery is an officer of the court who acts as an assistant to the chancellor. . . . In Maryland the office at one period existed under the inherent jurisdiction of the court of chancery, independently of statute. Masters may now also be appointed under the constitutional provision that "the judge or judges of any court may appoint such officers for their respective courts as may be necessary."'"

The nature and effect of the report of a Master was succinctly stated by Judge J. Dudley Digges, speaking for the Court of Appeals, in *Bar Assn. v. Marshall*, 269 Md. 510, 516, 307 A. 2d 677, 680 (1973):

"Previous opinions of this Court have discussed the importance to be attached to the findings of fact in a master's report by the ultimate trier of fact. In those cases we have said that although the report is only advisory, the court should give full consideration to it, particularly with respect to the credibility of witnesses, where the testimony is conflicting. And, the master's findings of fact from the evidence are prima facie correct and they will

not be disturbed unless determined to be clearly erroneous."

The contention that exceptants to the report of a Master have a *per se* right to present evidence *de novo* to the court by reason thereof was considered and rejected in *Bris Realty v. Phoenix Svgs. & Loan Assn.*, 238 Md. 84, 208 A. 2d 68 (1965), wherein it was said at 88, *et seq.* [69]:

"(I). *The refusal of the chancellor to permit the appellants to take testimony before him on the exceptions.* The record shows that the exceptions, as filed by the appellants to the special master's report, were general in form and failed to point out any finding of fact not supported by the testimony before the master, or any law misapplied by him to such facts in arriving at his allowance or disallowance of the respective claims.

"The appellants take the position that as to matters contained in those parts or paragraphs of the master's report to which they have generally excepted, they had the right to present testimony before the court *de novo*, citing *Egerton v. Reilly*, 1 G. & J. 385, and *Worthington v. Hiss*, 70 Md. 172, as authority. These two cases furnish no such authority. In *Egerton*, this Court merely held that the lower court erred in referring a matter to an auditor before preliminary pleadings had brought the case to issue; and in *Worthington*, the appeal was from a decree remanding a case to an auditor with specific instructions to state an account upon principles laid down in the opinion accompanying the decree. Both sides appealed from the directions given to the auditor and no procedural question with respect to testimony either before the auditor or before the court was raised, and nowhere does it appear that the trial court, in hearing exceptions to the auditor's account before its remand, heard any testimony. The appellants also cite, *Sewell v. Sewell*, 218 Md. 63, for the proposition that a

master is not a judicial officer and therefore the court cannot delegate its judicial function to a nonjudicial officer. The short answer to this is that the *Sewell* case dealt with testimony taken before an *examiner,* not a master. The powers and duties of examiners and masters are not coextensive. The former merely records testimony for perusal of the court, see Miller, *Equity Procedure,* p. 262, *et seq.,* whereas the latter, properly called an auditor and master, is an adviser of the court, makes findings, reports to the court and suggests the nature and propriety of the decree. Miller, *op. cit.,* p. 654.

"The cases of *Maryland Lumber Co. v. White,* 205 Md. 180, *Pinkston v. Higham,* 224 Md. 513, and *Alexander v. Hergenroeder,* 226 Md. 559, all dealing with reports of masters in chancery, clearly indicate our view that a master's findings are *prima facie* correct. When exceptions to auditor's reports are filed, they should point out the particular error or errors objected to and general exceptions cannot be considered. Miller, *op. cit.,* p. 643; *Scrivener v. Scrivener,* 1 H. & J. 743; *Young v. Omohundro,* 69 Md. 424. We believe this is equally true of exceptions to a master's report. One of the purposes of seeking the advice and recommendations of an auditor and master is to conserve the time of the court. If claimants had the right to offer new or additional testimony before the court, not only would there be no saving of the court's time but, perhaps, the whole structure of the auditor's and master's report would be worthless, thus requiring a remand and revision. Exceptions to a report of an auditor and master will not be sustained unless his findings of fact from the evidence are clearly erroneous, or unless he misapplies the law to his findings of fact. *Alexander v. Hergenroeder, supra.*"

In the light of the nature and effect of the Master's report and the conservation of the court's time sought to be

achieved by initial reference to him, we perceive no inconsistency between Sixth Circuit Rule S74.f.4. and Maryland Rule 321.d. As we see the latter Rule, the Court of Appeals did not intend to bring within its purview exceptions to the reports of a Master. That conclusion is buttressed by the circumstance that the Maryland Rules of Procedure make specific provision by Rule 910 for Juvenile Masters and the procedures to be followed when exceptions are taken in juvenile causes. As to Masters generally, however, no particular procedure has been prescribed by general rule. In view of this, most of the several Judicial Circuits of Maryland have adopted disparate local rules relating to the appointment and use of Masters, with some of them prescribing differing procedural courses to be followed when exceptions to Masters' reports are filed.[4]

We assume that the Court of Appeals is aware of those differing local rules because Maryland Rule 1, § f. provides that they shall be forwarded to that Court and to the State Court Administrator.

Accordingly, we see no illegality or impropriety in the enactment of a local rule leaving to the discretion of the trial court the question whether a court hearing upon the exceptions is necessary or desirable.

This Court has made plain, of course, that a local rule will not be permitted to demean or defeat the State's interest as *parens patriae* of minors or to lessen the obligation of the courts carefully to review cases in which their welfare is or may be threatened. In *Ellis v. Ellis*, 19 Md. App. 361, 366, *et seq.*, 311 A. 2d 428, 431 (1973), we said:

> "After all, it has been long established that the State, under our form of government, stands in its

---

4. First Judicial Circuit Rule 505;
  Second Judicial Circuit Rule 513;
  Third Judicial Circuit Rule S 3;
  Fifth Judicial Circuit Rule 502;
  Sixth Judicial Circuit Rule S74 as to Domestic Relations Masters; Rule 513 as to Special Masters;
  Seventh Judicial Circuit Rule S80 as to Domestic Relations Masters; Rule 513 as to Special Masters;
  Eighth Judicial Circuit Rule 571D as to Domestic Relations Masters; Rule 571E as to Masters generally.

relationship to minors as *parens patriae.* See *Thistlewood v. Ocean City,* 236 Md. 548; also 67 C.J.S. *Parens Patriae* 624. And rule or no rule, parties in child custody cases are entitled to have the carefully and intelligently exercised judgment of the Chancellor, as distinguished from that of the Master's alone. Without having at least reviewed the testimony and evidence adduced at the hearing before the Master, the Chancellor clearly was in no position to fulfill his judicial obligation to the parties. Nor is this Court in a position properly to discharge its function since in a case involving custody of a child, when our appellate review of a Chancellor's action is invoked, we do not merely review the findings and order of the Chancellor but must review the evidence before the Chancellor and make an independent assessment of it. We cannot here review the facts before the Chancellor because there were none. *Deckman v. Deckman,* 15 Md. App. 553. Moreover, the Chancellor did not even have the benefit of any so-called 'findings' of the Master (see *Bris Realty v. Phoenix, supra*), a requirement which the local rule does not compel in child custody cases, although a 'finding' as well as a 'recommendation' is required of a Master for Juvenile Causes. See local Rule 925."

We shall next address ourselves to the common contention of both Florence and Robert that the denial of a court hearing was an abuse of discretion under local Rule S74.

The factual posture of the subject case is markedly different than *Ellis v. Ellis, supra.* In *Ellis,* after observing that:

". . . the Chancellor routinely and automatically adopted, without any knowledge of the status, circumstances and living conditions of the parents, the recommendation of the Master that custody of the child be taken from the mother and awarded to the father[,]"

we declared:

> "Under the circumstances, we see no other recourse than to remand the case to the Circuit Court for Prince George's County with directions that the appropriate Chancellor in that court reconsider the order of January 30, 1973, in light of the now available testimony and evidence adduced at the hearing before the Master, Domestic Relations Causes, and issue such further order as the evidence and testimony would dictate to be in the best interest and welfare of the infant child of the parties." 19 Md. App. at 367-68, 311 A. 2d at 431.

In the subject case, on the other hand, the Master's Report of six pages made lengthy and explicit findings of fact in explanation of his recommendation. Moreover, the Master attached to that report numerous exhibits introduced by the parties at the hearing, including: (a) documents purporting to detail the income and expenses of Florence and Robert; (b) documents purporting to detail the costs of college attendance for Virginia; (c) the 1974 income tax return of Florence. Furthermore, portions of the testimony of Florence and Robert deemed by the parties to be of importance to their respective appeals were incorporated as appendices in their briefs to this Court.

We are persuaded, accordingly, that the record before this Court is such that we are able objectively to review: (a) the exercise of the chancellor's discretion in the denial of a hearing upon the exceptions pursuant to the Sixth Circuit Rule S74; and (b) whether the chancellor's ultimate decision was clearly erroneous.

### Exercise of Discretion Under Sixth Circuit Rule S74

The court order of December 9, 1975 (upon which the ultimate order appealed from was founded) makes clear that the chancellor had (1) read and considered the Master's report; (2) read and considered the exceptions to that report; (3) seen and considered the exhibits relating: (a) to the

income and expenses claimed by both parties; and (b) to the cost of college attendance by Virginia.

In short, the chancellor had access to and presumably considered all evidence presented by the parties upon the issues of a right to alimony by Florence and the cost of college attendance by Virginia.[5]

At no point did the exceptions filed by Florence allege that additional evidence was essential to full consideration of the issues by the chancellor. Her complaints were that the Master (a) had not properly weighed the evidence; (b) had made mathematical errors in calculations; (c) should have required the husband to pay a greater amount "because of his greater earning power"; (d) failed to recognize "the wife was not forced to contribute to the support of the other children attending college during the marriage of the parties"; and (e) ignored preliminary college expenses totaling $1,235.00.

Similarly, the exceptions by Robert failed to allege that additional evidence was desired or necessary for decision. His plaint, in brief, was merely that the Master's recommendation was unfair.

Under such circumstances, the evidence available to and examined by the chancellor clearly permitted him to pass objective judgment upon the recommendation of the Master. We perceive no abuse of discretion in his denial of a court hearing upon the exceptions.

### Child Support

Florence contends that the amount required for the maintenance and support of Virginia is $668.44 monthly. She contends as well that "the mother is chargeable with the duty of support only to the extent that the father is incapable." The Master, supported by substantial and persuasive evidence, found that the amount required was $520.00 monthly. His finding is *prima facie* correct. We cannot say his finding, concurred in by the chancellor, was clearly erroneous. *Bar Assn. v. Marshall, supra.*

---

5. Robert does not contest the appropriateness of college attendance by Virginia.

Florence's contention that as the mother she is but contingently obligated to contribute to the support of her minor child is unsound under the circumstances of this case. She is employed with a substantial annual income. *See* Article 72A, § 1; *Melson v. Melson*, 151 Md. 196, 206, 134 A. 136, 139-40 (1926). *See also* Article 46 Maryland Declaration of Rights.

Robert, conceding that the sum of $520.00 monthly is a reasonable amount for the support and maintenance of Virginia during the period of her college attendance, contends that the amount of $480.00 monthly required to be paid by him is an undue burden upon him under the evidence submitted to the Master.

It is not disputed here that Florence's gross income exceeds $16,000.00 per year [6] and that Robert's gross income exceeds $27,000.00 per year.

The Master found that Florence's net income was $832.20 monthly and pointed out that her financial statement showed a monthly need of $640.00 for her own support. Robert contends that the finding as to net income was erroneous and was in fact more than $100.00 per month higher. Florence's income tax return fully supports Robert's contention. The Master's finding was clearly erroneous as to the net income of Florence. It was in fact not less than $940.00 and left a balance after personal living expenses of not less than $300.00 monthly.

The Master found that Robert's net income was $1,488.10 monthly. There was substantial evidence to support the finding. Robert's financial statement indicated a monthly need of $996.00 for his own support. He thus was left with a balance of $492.10 that we shall round to $500.00 monthly.

The record indicates no apparent padding of the personal expenses of the parties. Under such a condition we conclude from the above that the chancellor was clearly erroneous in requiring Robert to pay $480.00 monthly for Virginia's support and maintenance. We think the proper assignment

6. Florence filed a financial statement indicating an income about one-half of that sum. She retreated from that position during her testimony, conceding a wage of $16,000.00 annually.

of parental responsibility for her support in this case fairly can be made on the basis of the net monies remaining available to the parties after expenses, namely $500.00 monthly as to Robert; $300.00 monthly as to Florence. Otherwise stated, we conclude that Robert should be burdened with five-eighths of Virginia's maintenance and support. In terms of dollars monthly this would be: 5/8 X 520.00 = $325.00 monthly.

### Florence's Claim for Counsel Fees

The petition of Florence to increase child support included a claim for a counsel fee under Article 16, § 5A. Neither the Master nor the chancellor addressed that claim. It was neither granted nor denied. The allowance of counsel fees under § 5A is a matter directed to the discretion of the trial court. *Jackson v. Jackson*, 272 Md. 107, 321 A. 2d 162 (1974). We think it is appropriate for the chancellor to consider the issue upon remand without comment or discussion by this Court.

*Order reversed in part and remanded for the passage of an order not inconsistent with this opinion. The costs to be equally divided.*