950 A.2d 787

In re MARCUS J.

No. 107, Sept. Term, 2007.

Court of Appeals of Maryland.

June 17, 2008.

Mary Ann ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for petitioner.

Peter F. Rose, General Counsel (Nancy S. Forster, Public Defender), on brief, for respondent.

Argued before BELL, C.J.,*RAKER, HARRELL, BATTAGLIA, GREENE, ELDRIDGE (Retired, Specially Assigned) and CATHELL (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

In the present case, Marcus J. excepted to a master's finding that he was in possession of a handgun, and thus a delinquent child, but his exceptions were dismissed by a Circuit Court Judge for Baltimore City. The Court of Special Appeals vacated the judgment of the Circuit Court and held that Marcus J. was entitled to a de novo hearing on all findings, conclusions and recommendations of the master. We granted certiorari to answer the following question:

> Did the Court of Special Appeals incorrectly overturn the juvenile court's dismissal of Marcus J.'s exceptions to the juvenile master's recommendations in his case, where the juvenile court held that Marcus J. failed to comply with the specificity requirements of Rule 11–111and Section 3–807(c) of the Courts and Judicial Proceedings Article and the juvenile court's policy implementing those provisions? [1]

We shall affirm the judgment of the Court of Special Appeals and conclude that Marcus J. was entitled to a de novo hearing as to all the matters decided by the master.

## I. Introduction

At about 10:30 p.m. on August 24, 2006, in Baltimore City, fourteen year-old Marcus J. was approached by officers in a

---

\* Raker, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. While the State's Petition for Writ of Certiorari posed this question, a different question was addressed in the State's brief:

> Where the juvenile court held that Marcus J. failed to comply with the juvenile court's policy implementing the specificity requirements of Rule 11–111 and Section 3–807(c) of the Courts and Judicial Proceedings Article, did the Court of Special Appeals incorrectly overturn the juvenile court's dismissal of Marcus J.'s exceptions to the juvenile master's recommendations and hold that Marcus J. was entitled to an all-encompassing hearing *de novo?*

patrol car who asked him to "come here"; Marcus J. began to run and threw something away as he was running. The police discovered a gun in the yard nearby, which Marcus J. denied was his.

He was subsequently charged as a juvenile with one count of carrying a handgun, one count of concealing a dangerous or deadly weapon,[2] and one count of possession of a firearm while under the age of 21. On the day of the adjudicatory hearing before a master, the State requested a postponement in order to obtain an operability report on the handgun, as well as a fingerprint analysis,[3] both of which were not yet available. The postponement was denied. As a result, the State called Officer Charles Thompson who testified, over a defense objection, regarding whether the handgun was operational:

[STATE'S ATTORNEY]: Officer Thompson, I'm going to ask you, if you would, to pick up the weapon and the weapon has a barrel?

[OFFICER]: Yes.

[STATE'S ATTORNEY]: And it has been rendered safe by you and double-checked by the sheriff?

[OFFICER]: That's correct.

[STATE'S ATTORNEY]: I'm going to ask you if you would please take a look at the barrel and describe the condition of the barrel.

[MARCUS J.'S ATTORNEY]: Objection.

[MASTER]: What do you mean "describe the condition"?

---

**2.** Although the State's petition alleges that Marcus J. violated Section 4–101 of the Criminal Law Article, Maryland Code (2002, 2006 Supp.), for wearing or carrying a dangerous weapon, we note that a handgun is not within the definition of a dangerous weapon under Section 4–101(a)(5)(ii), which states:

(ii) "Weapon" does not include:
1. a handgun; or
2. a penknife without a switchblade.

**3.** The State later stipulated that Marcus J.'s fingerprints were not o n the gun.

[STATE'S ATTORNEY]: Describe what you see when you look in the barrel.

[MASTER]: Okay. That's different. Describe what you see when you look in the barrel.

\*     \*     \*

[STATE'S ATTORNEY]: I'm asking you, today, if you would look down the barrel and tell me what you see.

[OFFICER]: Okay. I see my thumbnail and I also see [b]ands and grooves in the barrel.

[STATE'S ATTORNEY]: Do you see any obstructions in the barrel?

[OFFICER]: No, I do not.

[STATE'S ATTORNEY]: I'm going to ask you to put your finger on the trigger of the weapon and pull that back.

[OFFICER]: (Witness complied.)

[STATE'S ATTORNEY]: Does it go back?

[OFFICER]: Yes, it does.

[STATE'S ATTORNEY]: Is there a way that you can render it to go forward?

[OFFICER]: Yes, by depressing the trigger.

[MARCUS J.'S ATTORNEY]: I'm going to object, Your Honor, to these lines of questions. This officer is not certified to, again, do any type of operability test. I don't believe he's been classified as an expert to do any type [of] tests on the operability of handguns at this point.

The master made a finding of facts sustained,[4] finding specifically that "[t]he testimony of witnesses supported the sustained counts," and that "[c]onflicting testimony concerning the sustained counts was resolved in favor of the witness[ ] for

---

4. When a master or judge makes a finding of facts sustained, he or she determines that the allegations set forth in the State's petition are supported by the evidence presented. *See* Md. Rule 11–115(a) ("If after an adjudicatory hearing the court determines that the allegations of the petition at issue in the adjudicatory hearing have been sustained, it shall promptly schedule a separate disposition hearing.").

the State." A disposition hearing [5] was held in November of 2006, after which the master recommended that Marcus J. be found to be "a delinquent child" and further recommended that he be placed on probation for an indefinite period, subject to various conditions, including substance abuse outpatient counseling, mandatory school attendance, community service and participation in a mentor program.

Within five days, Marcus J. filed a Notice of Exception and Request for Hearing, in which he stated:

Pursuant to Maryland Code, Courts and Judicial Proceedings Article, section 3–815(c) and Rule 11–111(c) of the Maryland Rules of Procedure, please be advised that the Respondent excepts to the findings and proposed orders of [the master], on the 3rd day November, 2006, in the above-captioned petition(s) and requests that the matter be set for a hearing de novo, before the Judge of this Honorable Court and in support of the exception, notes these errors:

Respondents [sic] counsel is excepting to [the master's] findings at the adjudicatory hearing held on 10/6/06 and the disposition hearing on 11/3/06. [The master] erred in her admission of an non experts [sic] testimony on the operability of a handgun over Respondents [sic] council [sic] objection. Moreover, [the master] erred in her facts and findings in the adjudicatory and disposition hearing.

During the exceptions hearing, Marcus J.'s attorney stated, in response to the Judge's statement that she did not comply with the exceptions policy of the Baltimore City Circuit Court when exercising its juvenile jurisdiction,[6] that she "did file the

---

**5.** A disposition hearing is a hearing to determine:
(1) Whether a child needs or requires guidance, treatment, or rehabilitation; and if so
(2) The nature of the guidance, treatment, or rehabilitation.
Md.Code (1974, 2006 Repl.Vol.), § 3–8A–01 (p) of the Courts and Judicial Proceedings Article.

**6.** The exceptions policy apparently referred to the policy adopted in the Baltimore City Circuit Court whereby a form order is required to be entered in every case in which a party excepted to the master's proposed findings, conclusions, recommendations or orders. The form

exception and the exception does specifically state what I'm excepting to." Marcus J.'s attorney continued:

> Your Honor, I filed my exceptions, the law i[s] very clear that my Client is allowed an exception de novo hearing based on filing [ ] the exceptions with the Clerk's office, which was properly done within the five days. That is the law. The law that my Client is entitled to an exception de novo, as long as I file the exception within five days. That is what the law states.

The Judge, nonetheless, dismissed Marcus J.'s exceptions.

Marcus J. appealed to the Court of Special Appeals, in which he posed the single question of whether the Circuit Court erred in dismissing his exceptions. In a reported opinion, the intermediate appellate court vacated the judgment of the Circuit Court and remanded the case for a hearing "as to all matters decided by the master." *In re Marcus J.*, 175 Md.App. 703, 716, 931 A.2d 1146, 1154 (2007). The court iterated that, "[b]ecause a juvenile is, in fact, entitled to elect a *de novo* hearing on exceptions, and is entitled to file exceptions to 'all of the master's findings, conclusions, and recommendations,' we view the exceptions filed by Marcus as sufficiently specific to communicate his election to avail himself of that right," and that "the circuit court erred in basing its dismissal of the exceptions on the juvenile's alleged failure to comply with a local 'exception policy' that—*as applied in this*

---

order required that a party requesting an exceptions hearing on the record file a memorandum within 10 days "specif[ying] any finding of fact and conclusion of law to which that party is taking exception" as well as "the reason(s) as to why the Master's recommended finding of fact(s) or conclusion(s) of law is in error"; the form order did not require the filing of a memorandum if the party requested a hearing de novo. *Forster v. Hargadon*, 398 Md. 298, 303, 920 A.2d 1049, 1052 (2007). The Judge in this case, however, stated that "in addition to the delivery of copies of the exception and memorandum to all parties, the party filing exceptions on memorandum shall deliver a copy of the exception and the memorandum to the presiding Judge, or if a Judge has not been designated to the Judge in charge. I checked my office [and I] didn't get anything." The parties, however, have stipulated that this policy did not go into effect until after the initial hearing in this case, so we need not and will not address the policy.

*case*—purportedly imposed requirements beyond those set forth in Rule 11–111 and CJP § 3–807(c)." *Id.* at 712, 715–16, 931 A.2d at 1151–52, 1154.

The State petitioned for certiorari, which we granted. *In re Marcus J.*, 402 Md. 355, 936 A.2d 852 (2007). We shall hold that, under Section 3–807(c) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), and Maryland Rule 11–111, Marcus J. was entitled to a de novo hearing as to all matters decided by the master.

## II. Discussion

The State acknowledges to the extent Marcus J. specifically excepted to the police officer's non-expert testimony on the operability of the handgun, that an exceptions hearing as to that exception would be appropriate. The State, nonetheless, argues that the Court of Special Appeals erred in concluding that Marcus J. had a right to a de novo hearing on all of the masters findings, conclusions and recommendations under Section 3–807(c)(1) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), and Maryland Rule 11–111(c).

In response to the State's argument, Marcus J. contends that the intermediate appellate court was correct in concluding that Marcus J. complied with the statute and Rule governing the filing of exceptions and the request for a de novo hearing. Marcus J. argues that he was entitled to have his case heard before a qualified circuit court judge and that Section 3–807(c) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), and Maryland Rule 11–111 provide him with the option of a de novo hearing on all matters.

We utilize masters in many jurisdictions in various types of proceedings, such as domestic relations cases, general civil matters and, most importantly for the present case, in juvenile causes, including shelter care and delinquency. In *State v. Wiegmann*, 350 Md. 585, 714 A.2d 841 (1998), we had occasion to explore the role of masters:

A master is not a judicial officer, and the Maryland Constitution does not vest a master with any judicial powers. *In re Anderson*, 272 Md. 85, 106, 321 A.2d 516 (1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975); *see also Swisher v. Brady*, 438 U.S. 204, 209, 98 S.Ct. 2699, 2703, 57 L.Ed.2d 705 (1978) ("masters [in Maryland] are entrusted with none of the judicial power of the State"); *Lemley v. Lemley*, 102 Md.App. 266, 277, 649 A.2d 1119 (1994) ("[T]he master is not a judge and is not vested with any part of the State's judicial power."); *Sensabaugh v. Gorday*, 90 Md.App. 379, 390, 600 A.2d 1204 (1992) ("Once a master has recommended a contempt proceeding it is necessary for the court to issue the show cause order because the master does not have the power to issue such orders."). "Simply put, the Master is a ministerial and not a judicial officer." *Levitt v. Levitt*, 79 Md.App. 394, 399, 556 A.2d 1162, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989).

In *Nnoli v. Nnoli*, 101 Md.App. 243, 646 A.2d 1021 (1994), [the Court of Special Appeals] observed that a master has historically been an

> "adviser of the court as to matters of jurisdiction, parties, pleading, proof and in other respects where he may be of assistance to the court.... The duties of the master are of an advisory character only. He decides nothing, but merely reports to the court the result of his examination of the proceedings, with a suggestion as to the propriety of the court passing a decree."

*Id.* at 261 n. 5, 646 A.2d 1021 (quoting Edgar G. Miller, Jr. *Equity Procedure* § 556, at 654–55 (1897)). Thus, a judge "may never delegate away a part of the decision making function to a master—a non-judicial officer." *Wenger v. Wenger*, 42 Md.App. 596, 602, 402 A.2d 94 (1979). Consequently, even when a judge defers to a master's fact-finding, the judge does not defer to the master's recommendation as to the appropriate course of action. *Id.* at 606, 402 A.2d 94; *see also Ellis v. Ellis*, 19 Md.App. 361, 365, 311 A.2d 428 (1973).

A master is, however, an officer of the court, appointed by the circuit court; that court has constitutional authority to make such appointments. Md. Const. art. 4, § 9 ("The Judge, or Judges of any Court, may appoint such officers for their respective Courts as may be found necessary."); Md. Rule 2–541(a)(3) ("A master serves at the pleasure of the appointing court and is an officer of the court in which the referred matter is pending."). Nevertheless, a master's status as an "officer of the court" does not confer judicial powers upon the master, such as the authority to hold someone in contempt, to sign a warrant, or to order a police officer to make an arrest. Indeed, "[a] master is not the trial judge. A master does not replace her or him." *Wise–Jones*, 117 Md.App. at 500, 700 A.2d 852.

*Id.* at 593–595, 714 A.2d at 845.[7]

---

7. The history of the development of the juvenile court system in Maryland, as well as the role of juvenile masters before 1970, was extensively discussed by Judge Marvin H. Smith, on behalf of this Court, in *In re Anderson*, 272 Md. 85, 94–97, 321 A.2d 516, 521–23 (1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975). He noted, in part, that:

> Originally, juvenile matters in Maryland were not handled in equity. Provision for a special judicial officer to handle juvenile matters came into Maryland law with passage of Chapter 611 of the Acts of 1902. It authorized the appointment in Baltimore City of a "Magistrate for Juvenile Causes" to "have exclusive jurisdiction of all cases of trial, or commitment for trial, or of commitment to any reformatory or other institution, of all minors under sixteen years of age...." Judge Charles E. Moylan, Sr., in *Comments on the Juvenile Court*, 25 Md. L.Rev. 310 (1965), states that the first juvenile court in the United States was established in Chicago in 1899.
>
> In 1940 Governor Herbert R. O'Conor appointed a Juvenile Delinquency Commission "to consider the whole field of the treatment of juvenile delinquency in Maryland, and to report its findings to the Governor and to the General Assembly at its session of 1941." *Report of Juvenile Delinquency Commission* (1941) states:
>
> "Baltimore is the only large city in the United States whose Juvenile Court judges are Justices of the Peace." *Id.* at 16.
>
> Accordingly, it recommended "an enabling amendment to empower the Legislature to establish a Juvenile Court in Baltimore City." Chapter 824 of the Acts of 1941 proposed a constitutional amendment creating "[a] Juvenile Court ... for Baltimore City" and autho-

In 1970, this Court adopted Rule 908(e),[8] the Rule from

rizing the General Assembly to "establish a Juvenile Court for any other incorporated city or town or any county of the State."

\*   \*   \*

We surmise that Chapter 818 of the Acts of 1943 was passed as a result of the recommendation of that Commission that "[i]n addition to the jurisdiction [then] possessed and exercised by the Circuit Court of Baltimore City, said Court [should] have jurisdiction in juvenile causes as [t]hereinafter defined." That act provided for the appointment by the Supreme Bench of Baltimore City, upon recommendation of the judge assigned to exercise the jurisdiction in juvenile causes, of "a suitable person to act as Master." The master was required at the conclusion of a hearing to "transmit to the Judge all papers relating to the case, together with his findings and recommendations in writing," with the further proviso that if no hearing were requested relative to those findings and recommendations they should, "when confirmed by an order of the Judge, . . . become the judgment of the court."

\*   \*   \*

The Legislative Council of Maryland appointed a subcommittee on juvenile causes in 1968. Its report recommended the revisions in the juvenile law which formed the basis for Chapter 432 of the Acts of 1969. Most of Code (195 7, 1973 Repl.Vol.) Art. 26, §§ 51–71, under which these cases arose, was enacted by that chapter.

8. Rule 908(e) stated:

1. Hearing Before Master.

The master shall hear such cases as may be assigned to him by the court and upon the conclusion of the hearing shall announce his findings and recommendations. All papers relating to the case together with the master's findings and recommendations shall then be transmitted to the judge.

2. Exceptions to Findings or Recommendations.

The petitioner or any party may file written exceptions to the master's findings or recommendations or any part thereof within five (5) days after the hearing. Exceptions by a petitioner after a delinquency hearing may only be taken by the State's attorney. The clerk designated by the court, upon the filing of such exceptions, shall notify the petitioner and all parties of the time and place of the hearing before the judge.

3. Order of Judge.

In the absence of exceptions, the master's findings and recommendations shall promptly be confirmed, modified or remanded by the judge. If, within the specified time, exceptions are filed, the judge shall hear the entire matter or such specific matters as set forth in the exceptions *de novo*.

In 1975, Rule 908 was revised and renumbered as Rule 910. The revised Rule prohibited the State from requesting a de novo hearing before a judge; the State had only the ability to request a hearing on

which current Rule 11–111 [9] was derived, which, for the first time, enabled the filing of "written exceptions to the master's findings or recommendations or any part thereof," required the circuit court judge to "hear the entire matter or such specific matters as set forth in the exceptions *de novo* " and mandated that the judge promptly confirm, modify or remand the findings and recommendations of the master. Rule 11–111(c) provides for the filing of exceptions [10] to a master's

---

the record. Shortly thereafter, Rule 910 was renumbered with nonsubstantive changes as Rule 911. Former Rule 911 was subsequently renumbered, with changes irrelevant to our discussion, as Rule 11–111, effective January 1, 1997.

**9.** Rule 11–111(c) states:

Any party may file exceptions to the master's proposed findings, conclusions, recommendations or proposed orders. Exceptions shall be in writing, filed with the clerk within five days after the master's report is served upon the party, and shall specify those items to which the party excepts, and whether the hearing is to be de novo or on the record.

Upon the filing of exceptions, a prompt hearing shall be scheduled on the exceptions. An excepting party other than the State may elect a hearing de novo or a hearing on the record. If the State is the excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection. In either case the hearing shall be limited to those matters to which exceptions have been taken.

**10.** We have previously discussed the importance of the ability to file exceptions under Rule 11–111(c) to a master's findings in *In re Kaela C.*, 394 Md. 432, 906 A.2d 915 (2006). There we stated that in order "to protect a party's right to have a matter heard by a judge, Rule 11–111(c) requires that 'upon the filing of exceptions,' the trial judge *must* hold 'a prompt hearing' on those exceptions." *Id.* at 474, 906 A.2d at 939–40 (emphasis in original). We continued:

As Rule 11–111's provisions demonstrate, the only circumstances under which a party is *guaranteed* a hearing before a trial judge are those in which the party has filed exceptions. *See* Maryland Rule 11–111(c) ("Upon the filing of exceptions, a prompt hearing shall be scheduled on the exceptions."). *Cf.* Maryland Rule 11–111(d) ("In the absence of timely and proper exceptions ... [t]he court ... may schedule and conduct a further hearing.").

*Id.* at 475, 906 A.2d at 940 (emphasis in original). We then concluded that "the right to file exceptions is a required protective provision of litigants' due process right to have his or her matter heard by a duly qualified judge." *Id. See also O'Brien v. O'Brien*, 367 Md. 547, 555, 790 A.2d 1, 5–6 (2002) (explaining that exceptions in the domestic relations

findings, conclusions and recommendations; it requires, how-
ever, that exceptions "specify those items to which the party
excepts, and whether the hearing is to be de novo or on the
record."

The Legislature, in 1975, after having considered whether to
prohibit the use of masters, enacted a provision permitting the
filing of exceptions "to any or all of the master's findings,
conclusions, and recommendations," provided the requesting
party "specify those items to which [the party] objects." *See*
1975 Maryland Laws, Chapter 554. The statute, which is now
codified at Section 3–807 of the Courts and Judicial Proceed-
ings Article, Maryland Code (1974, 2006 Repl.Vol.),[11] also

---

setting "serve a dual purpose—to inform the court, first, that the
excepting party is not satisfied with the master's recommendation, and,
second, of the reason why the court should not accept that recommen-
dation").

**11.** Section 3–807 of the Courts and Judicial Proceedings Article, Mary-
land Code (1974, 2006 Repl.Vol.), which was codified, before 2001, as
Section 3–813 of the Courts and Judicial Proceedings Article, states in
pertinent part:

(c) *Exceptions to findings, conclusions, and recommendations.*
—(1) Any party, in accordance with the Maryland Rules, may file
written exceptions to any or all of the master's findings, conclusions,
and recommendations, but shall specify those items to which the
party objects.
(2) The party who files exceptions may elect a hearing de novo or a
hearing on the record before the court unless the party is the State in
proceedings involving juvenile delinquency under Subtitle 8A of this
title.

    \*  \*  \*

(4) In either case, the hearing shall be limited to those matters to
which exceptions have been taken.
(d) *Proposals and recommendations.*—(1) The proposals and recom-
mendations of a master for juvenile causes do not constitute orders or
final action of the court.
(2) The proposals and recommendations shall be promptly reviewed
by the court, and, in the absence of timely and proper exceptions,
they may be adopted by the court and appropriate orders entered
based on them.
(3) Detention, community detention, or shelter care may be ordered
by a master pending court review of the master's findings, conclu-
sions, and recommendations.
(e) *Decision not to adopt master's findings.* If the court, on its own
motion and in the absence of timely and proper exceptions, decides

allows the filing party to elect a hearing de novo or a hearing on the record.

We now turn to whether Marcus J.'s exceptions meet the specificity requirement of the statute and Rule. Both Section 3–807 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), and Maryland Rule 11–111 allow a juvenile to file exceptions to the master's proposed findings, conclusions and recommendations provided that he or she *specify* those items to which the party excepts.[12] Specify is defined as "to name or state explicitly or in detail," Merriam–Webster's Collegiate Dictionary 1198 (11th ed.2005), and "[t]o state explicitly." Webster's II New College Dictionary 1060 (1999). Marcus J.'s Notice of Exception and Request for Hearing explicitly stated that the master "erred in her admission of an non experts [sic] testimony on the operability of a handgun over Respondents [sic] council [sic] objection." In the State's brief and at oral argument, the State conceded that the exception regarding non-expert testimony on the operability of the handgun met the specificity requirement of the statute and Rule. We agree, but cannot end our analysis here.

Marcus J. also filed additional exceptions, stating he was "excepting to [the master's] findings at the adjudicatory hearing held on 10/6/06 and the disposition hearing on 11/3/06," and that "[m]oreover, [the master] erred in her facts and findings in the adjudicatory and disposition hearing." Although the State argues that these exceptions are not specific,

---

not to adopt the master's findings, conclusions, and recommendations, or any of them, the court shall conduct a de novo hearing, unless all parties and the court agree to a hearing on the record.

**12.** A comparison of the requirements for filing exceptions under Rule 11–111 to the requirements under Rule 2–541, which governs the role of masters in domestic relations matters and "any other [civil] matter or issue not triable of right before a jury" to which the court refers a master, reflects what may be a more strenuous approach to the failure to except under Rule 2–541. Rule 2–541(g) states that "[a]ny matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise." The Rule also mandates that the excepting party submit a transcript and, based upon the transcript, "set forth the asserted error with particularity." *Id.*

they are *explicit,* reflecting the mandate of Section 3–807(c) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), which states that any party "may file written exceptions to any or all of the master's findings, conclusions, and recommendations." To conclude otherwise would render the word "all" in the statute meaningless and would otherwise limit the ability of a juvenile to have his or her concerns heard by a circuit court judge.

The issue, however, that could arise on remand and has consumed much of the resources of both the State and Marcus J. before us, involves whether Marcus J. is entitled to a de novo hearing, as he requested, or whether the Circuit Court hearing should be on the record. The statute and Rule provide for one or the other, although the scope of a hearing de novo is undefined. The common meaning of a de novo hearing is a "new hearing of a matter, conducted as if the original hearing had not taken place" and requires a "reviewing court's decision of a matter anew, giving no deference to a lower court's findings." Black's Law Dictionary 738 (8th ed.2004). In their treatise on appellate courts, Daniel J. Meador, Maurice Rosenberg and Paul D. Carrington, have noted that originally, "[i]n the English Court of Chancery the decision of a vice-chancellor [13] could be appealed to the chancellor and the case heard de novo. That is, the reviewing judge could receive evidence and make determinations of fact as though no proceeding had taken place previously." Daniel J. Meador, Maurice Rosenberg and Paul D. Carrington, *Appellate Courts: Structures, Functions, Processes, and Personnel* 11 (1994). As they also noted, this practice persists whereby "decisions of trial courts of limited jurisdiction can be appealed de novo to the trial courts of general jurisdiction." *Id.*

De novo in the present case, albeit different contextually, must enable the Circuit Court Judge to receive evidence and

---

**13.** A vice-chancellor was a "judge appointed to act for the chancellor, especially in a chancery court." Black's Law Dictionary 1597 (8th ed.2004).

make determinations of facts as though no prior proceeding had occurred, especially because a master is not recognized as a judge, but a ministerial actor making recommendations to an Article IV judge.[14] *See Harryman v. State,* 359 Md. 492, 505–06, 754 A.2d 1018, 1025–26 (2000) (describing a master as a " 'ministerial officer' who advises and assists a judge"); *Wiegmann,* 350 Md. at 593, 714 A.2d at 845 ("A master is not a judicial officer, and the Maryland Constitution does not vest a master with any judicial powers."); *In re Dewayne H.,* 290 Md. 401, 402 n. 1, 430 A.2d 76, 77 n. 1 (1981).

Because of this, we have held that a master's hearing in a juvenile matter does not place the juvenile in jeopardy; in *Anderson,* 272 Md. at 106, 321 A.2d at 527, we stated:

We have cited cases and authorities to the effect that a master is a ministerial officer, and not a judicial officer. We have called attention to the fact that under the Maryland Constitution a master is entrusted with no part of the judicial power of this State, although the earlier magistrate for juvenile causes was entrusted with such power as a justice of the peace. We have pointed out that, under the Maryland Rules applicable to juvenile cases and under the procedure generally where masters are involved, a master hears evidence and then reports his findings of fact and his recommendations to the chancellor. We have also pointed out that a master's findings do not become binding until approved by a judge of the court to which he reports.

---

**14.** Sections 1 and 2 of Article IV of the Maryland Constitution state:

The Judicial power of this State is vested in a Court of Appeals, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court. These Courts shall be Courts of Record, and each shall have a seal to be used in the authentication o f all process issuing from it.

 \*     \*     \*

The several Courts existing in this State at the time of the adoption of this Constitution, shall, until superseded under its provisions, continue with like powers and jurisdiction, and in the exercise thereof, both at Law and in Equity, in all respects, as if this Constitution had not been adopted; and when said Courts shall be so superseded, all causes, then depending in said Courts, shall pass into the jurisdiction of the several Courts, by which they may, respectively, be superseded.

Accordingly, we conclude that a hearing before a master is not such a hearing as places a juvenile in jeopardy. *Therefore, double jeopardy cannot arise if the matter is heard de novo before the chancellor.*

(emphasis added). *See also Swisher v. Brady*, 438 U.S. 204, 215, 98 S.Ct. 2699, 2706, 57 L.Ed.2d 705, 715 (1978) (iterating that the Maryland Rule allowing the State to file exceptions to a master's proposals does not require a juvenile to stand trial twice because under the master system, the "accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge").

Both *Anderson* and *Swisher* involved State requests for hearings on exceptions. In *Anderson*, we considered whether the State could request a de novo hearing on exceptions under Rule 908, which enabled the State to request a de novo hearing; we concluded that the State could request that hearing without placing the juvenile in jeopardy. *Anderson*, 272 Md. at 106, 321 A.2d at 527. This ruling precipitated nine juveniles filing for habeas corpus relief in *Swisher*, arguing that double jeopardy was implicated when the State took exceptions to masters' findings that were favorable to them. Under Rule 911, however, which became applicable at the time of *Swisher*, the State was no longer able to request a hearing de novo. In addressing the issue of whether the Rule enabling the State even to request a hearing on the record violated double jeopardy, the Supreme Court concluded that the juveniles were not placed in jeopardy, because the master's hearing is part of a single proceeding that is ultimately concluded by the adjudication of a circuit court judge. *Swisher*, 438 U.S. at 215, 98 S.Ct. at 2706, 57 L.Ed.2d at 715. Concomitantly, because the adjudication before a circuit court judge is the gravamen of the process, a juvenile must be entitled to elect to have a judge hear evidence, make findings and apply the law to the facts of the case, as though no proceeding had occurred, should the juvenile request a de novo hearing, after submitting appropriate exceptions. Under the present case, therefore, wherein Marcus J. took exception

to all matters decided by the master and unequivocally stated that he "requests that the matter be set for a hearing de novo," he was entitled to such a hearing.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

HARRELL and RAKER, JJ., Concur.

Concurring opinion by HARRELL, J., which RAKER, J., Joins.

On the record before us, I join the Majority opinion and judgment; however, had the Master's written report issued as a result of the 5 October 2006 adjudicatory hearing been other than a brief compilation of sweeping generalizations, I well may have joined the judgment only as to Marcus J.'s entitlement to a de novo hearing before a Circuit Court judge on the issue of the "admission of a non-expert's testimony on the operability of the handgun." Maryland Rule 11–111(c) and Maryland Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article, § 3–807(c) require that exceptions to a Master's written report be stated with specificity. Specificity, as used in these provisions, is a term best understood and applied in context, however.

In the present case, the Master's amended Order of 6 October 2006, arising from the adjudicatory hearing, stated, in relevant part:

As a result of the Adjudicatory hearing in the above case(s), the Master recommends that the Court find:

The following facts sustained:

| Name | Cmp | Cnt | Charge description |
|------|-----|-----|--------------------|
| Marcus J[.] | 7 | 1 | Handgun-Possession |
| Marcus J[.] | 7 | 2 | Deadly weapon-concealed |
| Marcus J[.] | 7 | 3 | Firearm-regulated-minor |

The following facts merged:

| Name | Comp | Cnt | Charge description |
|------|------|-----|--------------------|
| Marcus [J.] | 7 | 1 | Handgun-Possession |

In support of the above findings, the following evidence was accepted:

The testimony of witnesses supported the sustained counts.

Conflicting testimony concerning the sustained counts was resolved in favor of the witnesses for the State.

Parties stipulated that Respondent's fingerprints were not found on the revolver.

It is hereby ordered that Maryland Department of Juvenile Services is directed to provide care and custody for the child in detention eligible for evening reporting center, pending hearing on above entitled cause and for a period not to exceed the next hearing date.

The Court orders that the following agencies perform the following actions regarding Marcus J[.] by the next court session:

the Maryland Department of Juvenile Services shall submit an Investigation Report to the Court

The following person(s) appeared for the hearing:

Marcus J[.]

Carolyn Bellamy (Grandmother)

Sondra M. Douglas (Defense attorney for the child)

Janet Hankin (Supervising Attorney)

Charles A. Thompson (Police officer)

The next court action will be at a(n) Disposition hearing on 11/3/2006 at 1:00 PM in Pt 3/H–10. All persons listed as present at today's hearing have been given notice of the next court action.

The exceptions filed by Marcus J. were at least as specific as the Master's findings and conclusions, giving the Master's findings and conclusions the treatment they deserved. He should not be penalized for filing exceptions that largely were equally as unilluminating as the Master's findings and conclusions. A de novo hearing before a Circuit Court judge is necessary in order to understand the bases for any action on the charges in this case.

Had the Master's "supporting" findings been more specific, however, I likely would have concluded that, other than as to the challenge to the non-expert opinion regarding the operability of the handgun, Marcus J.'s exceptions, had they been filed "as is" in this case, would have been insufficiently specific according to the requirements of the Rule and the statute. To conclude otherwise puts the lie to the requirement that exceptions "shall specify those items [in the Master's written report] to which the party excepts." Maintaining a proper tension between judicial efficiency and economy on one hand, and a juvenile's rights on the other, would dictate such a result.

Despite the Majority opinion's reiteration of the limited role of the master in the juvenile justice scheme, it is clear that a master's recommended findings and conclusions may be adopted by a Circuit Court judge. Rule 11–111(d); Courts & Judicial Proceedings, § 3–807(d)(2). When exceptions are filed, the hearing before a Circuit Court judge is "limited to those matters to which exceptions have been taken." Rule 11–111(c); Courts & Judicial Proceedings, § 3–807(c)(4). Where the master's findings and conclusions are specific and explain the result reached at the adjudicatory hearing, it would make a mockery of the Rule and statute to conclude that a juvenile simply may take general exception to anything and everything and have that effort pass muster as having been taken with specificity.[15]

Judge RAKER has authorized me to state that she joins in this concurring opinion.

---

**15.** As the late Judge Thomas Hunter Lowe of the Court of Special Appeals once said to me in response to an *ipse dixit* point I tried to make at oral argument on behalf of a client, "Mr. Harrell, just because kittens are born in an oven doesn't make them biscuits." *See Supervisor of Assessments v. Washington National Arena Ltd. Partnership*, 42 Md.App. 695, 704, 402 A.2d 148 (1979). So, too, something is appropriately specific not merely because we declare it to be so, without reference to context, but because it may be justified (or not) on the particular record.